The STATE of Ohio, Appellee,

v.

AVERY, Appellant.

[Cite as *State v. Avery* (1998), 126 Ohio App.3d 36.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–97–30.

Decided April 14, 1998.

38

---

*R. Larry Schneider,* Union County Prosecuting Attorney, and *John C. Heinkel,* Assistant Prosecuting Attorney, for appellee.

*Anderson, Will, O'Donnell & Kitzler* and *Patricia O'Donnell Kitzler,* for appellant.

EVANS, Judge.

This appeal is brought by Edward B. Avery, Sr., appellant, from a judgment of the Court of Common Pleas of Union County, finding appellant guilty of first-degree rape, in violation of R.C. 2907.02(A)(2), second-degree robbery, in violation of R.C. 2911.02, first-degree aggravated burglary, in violation of R.C. 2911.11(B), and first-degree kidnapping, in violation of R.C. 2905.01. Appellant was sentenced to consecutive sentences of ten years in prison for the counts of rape, aggravated burglary, and kidnapping, and eight years in prison for the robbery offense, to be served concurrently with all other counts. Pursuant to R.C. 2950.09(B), appellant was also adjudicated a sexual predator by the trial court.

The facts leading to appellant's conviction for the above crimes occurred on March 14, 1997. That morning appellant returned to an apartment complex in Marysville, Ohio, after a long night of drinking, to find himself locked out of the apartment where he was staying. While waiting for the other occupants of the apartment to return home, appellant sought refuge from the rain on an apartment patio belonging to Vicky Johnson, another tenant in the complex. From her patio, appellant watched Vicky Johnson and her boyfriend until they left the building. While they were gone, appellant entered the apartment through an unlocked door.

Meanwhile, Johnson drove her boyfriend to work and returned home shortly before 6:00 a.m. As Johnson entered her bedroom, she was attacked by appellant. A short struggle ensued as appellant covered Johnson's head with a shirt and threw her down on the bed. Appellant proceeded to rape Johnson, using a blanket to further blind her and protect his anonymity. At one point, Johnson did catch a glimpse of appellant's fingers and knew her attacker was black. After the rape, appellant led Johnson to the bathroom, her head still covered, and told her to shower. Although the door to the restroom did not lock, Johnson was able to brace her body between the sink and the door to keep appellant from reentering the bathroom. Appellant finally left Johnson's apartment through the patio door, picking up $2 from a coffee table before leaving.

Appellant was subsequently arrested and confessed to the events surrounding the rape of Vicky Johnson on March 14, 1997. Appellant pled not guilty to the charges against him, and his case proceeded to trial. Appellant was subsequently found guilty by a jury of rape, aggravated burglary, robbery, and kidnapping, and was sentenced by the trial court as described above.

On appeal, appellant asserts four errors for review.

### Assignment of Error No. 1

"Appellant was deprived of a fair trial and due process as guaranteed by the Ohio and U.S. Constitutions, by the state's misleading bill of particulars regard-

ing the kidnapping charge, as well as by the court's abuse of discretion in permitting the state to constructively amend the indictment and bill of particulars at trial."

Appellant first argues that the bill of particulars failed to be specific enough to alert the defense to the prosecution's theory of the case regarding the charge of kidnapping. Appellant claims that since the indictment contained a sexual-motivation specification, he was misled to think that the prosecution would pursue the kidnaping charge as it was connected with the rape. Under this assumption, it was appellant's trial strategy that even if he was convicted of kidnapping, he could prevail at sentencing by having the sentences for the rape and kidnapping merged on the theory of allied offenses of similar import. However, appellant claims that it was not until the close of trial that he learned of the prosecution's argument that a kidnapping occurred after and separate from the conduct constituting the rape. Appellant claims that he was surprised by this argument and was deprived of the opportunity to argue a safe-release defense at trial and an allied-offenses theory at sentencing.

■■ The record contains no motion filed by trial counsel objecting to the indictment or requesting a more specific bill of particulars. Apparently, trial counsel was satisfied with the information contained therein. Moreover, the failure to object also indicates a waiver of any defect in the indictment and the bill of particulars. *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N.E.2d 891, 901–902, citing *State v. Joseph* (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 290–291; and *State v. Mills* (1992), 62 Ohio St.3d 357, 363, 582 N.E.2d 972, 980 ("Under Crim.R. 12[B] and 12[G], alleged defects in an indictment must be asserted before trial or they are waived"); see, also, *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367–1368, death penalty vacated (1977), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. Counsel cannot now be heard to claim error when he failed to call that error to the trial court's attention at a time when the error could have been corrected. *Id.* Accordingly, our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *Joseph*, 73 Ohio St.3d at 455, 653 N.E.2d at 290–291.

A review of the indictment and bill of particulars reveals that appellant was charged with kidnapping, in violation of R.C. 2905.01(A)(2), (3), and (4),[1] although these subsections were not explicitly cited. The indictment states:

---

1. R.C. 2905.01 states:

"(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where

"COUNT IV: Edward B. Avery Sr. on or about March 14, 1997 in Union County, State of Ohio by force, threat, or deception by any means, did remove another from the place where the other person is found or restrain the liberty of the other person for the purpose of facilitating the commission of any felony or flight thereafter [R.C. 2905.01(A)(2) ] and/or to terrorize or to inflict serious physical harm on the victim or another [R.C. 2905.01(A)(3) ] and/or to engage in sexual activity, as defined in Ohio Revised Code Section 2907.01, with the victim against the victim's will [R.C. 2905.01(A)(4) ]. This constitutes the offense of Kidnapping in violation of Ohio Revised Code Section 2905.01, a felony of the first degree.

"SPECIFICATION: The Grand Jurors further find and specify that the offender; to-wit: Edward B. Avery Sr. committed the offense of kidnapping with a sexual motivation."

Likewise, the bill of particulars which was submitted on the initiative of the prosecutor, before a defense request, reiterated the above language, adding:

"[T]o wit: on or about the above referenced date in the City of Marysville, Union County, Ohio Edward B. Avery Sr. did facilitate the commission of a felony or the flight thereafter, did remove another person from where she was found, covering her head, forcibly rape her and/or restrained the victim's liberty for the purposes of facilitating the commission of any felony or flight thereafter and/or to terrorize or to inflict serious physical harm on the victim or did engage in sexual activity, all of which has been previously defined in the other counts of this Bill of Particulars herein."

 "[T]he purpose for giving a bill of particulars is 'to elucidate or particularize the conduct of the accused,' but not 'to provide the accused with specifications of evidence or to serve as a substitute for discovery.' " *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262, quoting *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 412, 478 N.E.2d 781, 784. Nonetheless, in this case, the record indicates that the state provided a discovery packet to the defense along with the bill of particulars, which outlined the events forming the basis of the charges. The packet contained a list of prosecution witnesses, a copy of a statement made by appellant confessing to the events of March 14, 1997, and a police report by the investigating officers summarizing appellant's

---

the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
"(2) To facilitate the commission of any felony or flight thereafter;
"(3) To terrorize, or inflict serious physical harm on the victim or another;
"(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

statement. In the transcript of appellant's statement, appellant describes keeping the blanket over Johnson's face as she moved from the bed to the bathroom to shower after the rape. The police summary also stated that appellant "threw a blanket over [Johnson's] head, so she wouldn't see him * * *. He did not know why he raped her, but said he did have intercourse with her * * *. He said he then led her to the bathroom where he told her to wash up." Clearly, this information would be a basis for the prosecution to claim that appellant did "remove another person from where she was found, covering her head * * * and/or restrained the victim's liberty for the purposes of facilitating the commission of any felony or flight thereafter" as described in the bill of particulars.

▇ Even if we agree that the bill of particulars was not as detailed as it could have been, we do not find that appellant was prejudiced as a result or that the outcome of appellant's trial would have been different but for the error. First, appellant was not denied the opportunity to argue the rape and kidnapping as allied offenses insofar as Johnson was restrained during the actual rape. However, the prosecutor is not bound by one theory of kidnapping when the facts support additional bases for the charge. In this case, we do not believe that it can be said that appellant was surprised at the close of trial with the state's argument of a kidnapping separate from the rape, since appellant was made aware through discovery that Johnson was also forcibly moved from the bed to the bathroom, her head still covered by a blanket, *after* the rape had ended. Therefore, the case also supported a theory of a kidnapping separate from the rape, but in furtherance of it, for which the doctrine of allied offenses would not apply.

Second, appellant was not denied a safe-release defense pursuant to R.C. 2905.01(C). This provision states that the offense of kidnapping will be reduced to an aggravated felony of the second degree if the offender releases the victim "in a safe place unharmed." The record does not support appellant's contention that Johnson was released unharmed. To the contrary, Johnson was raped. This fact alone is ample evidence of harm. In addition, Johnson testified that appellant had held the blanket so tightly over her head that she could not breathe and thought she was going to die. Witnesses testified at trial that on the day of the assault, Johnson had red marks about her face and could not stop shaking from the trauma of appellant's attack.

Finally, appellant's defense was simply not prejudiced by any alleged variance between the bill of particulars and the trial evidence on the kidnapping charge because appellant's entire defense was based on the theory that Johnson consented to the events of March 14, 1997. Appellant argued that Johnson had agreed to leave her door unlocked for appellant and had agreed to have sex with him. If

this were true and it was believed by the jury, it would have made the asportation of the victim from the bed to the bathroom immaterial.

For the foregoing reasons, we find no prejudice resulting to appellant by the language of the bill of particulars. Nor can we say, under the doctrine of plain error, that but for any alleged error, the outcome of the trial would have been different. Consequently, appellant's first assignment of error is overruled.

## Assignment of Error No. 2

"The trial court abused its discretion by failing to instruct the jury that its verdict must be unanimous as to the specific kidnapping alternatives available under R.C. 2905.01, resulting in a violation of defendant's sixth amendment right to a unanimous verdict."

At trial, the state presented alternative theories of kidnapping. The facts presented by the state indicated that Johnson was first restrained of her liberty when appellant attacked her in the bedroom and threw her on her bed. This restraint continued during the rape and afterward, as appellant steered a blindfolded Johnson to the bathroom in an attempt to destroy evidence of his crime.

Appellant's second assignment of error suggests that his right to a unanimous verdict encompasses a right to a unanimous theory of culpable conduct supporting that verdict. Because the kidnapping statute speaks in the alternative,[2] appellant contends that the jurors could have found him guilty based on any one of a number of acts suggested by the prosecution, but not necessarily by unanimous agreement as to one act. For example, some jurors may have found that a kidnapping occurred as a result of the forceful restraint imposed on the victim during the rape, while others could have believed that the forceful removal or asportation of the victim from the bed to the bathroom after the rape satisfied the kidnapping charge. As a result, appellant believes that his conviction could be based on a composite or patchwork verdict in violation of the Sixth Amendment principle that a jury verdict must be unanimous in its finding of guilt.

Appellant's trial counsel failed to object to the charge given to the jury or to request an augmented jury instruction; however, appellant asserts that reversal is warranted under the doctrine of plain error, since substantial rights were affected if his conviction was based on a less than unanimous jury verdict. Crim.R. 52(B).

In support of his assignment of error, appellant cites *United States v. Gipson* (C.A.5, 1977), 553 F.2d 453, which held that in federal criminal cases, a jury must

---

**2.** See fn. 1, *supra*.

unanimously agree on at least one of multiple alternative conceptually distinct acts that would constitute the *actus reus* of the crime before finding a defendant guilty. See, also, *State v. Johnson* (1989), 46 Ohio St.3d 96, 104–105, 545 N.E.2d 636, 643–645; *United States v. Beros* (C.A.3, 1987), 833 F.2d 455, 461 (where there appears a possibility of jury confusion in light of the allegations made and the statute charged, the general unanimity instruction does not suffice; instead, an augmented general instruction is necessary to ensure that the jury understands its duty to unanimously agree to a particular set of facts); *United States v. Duncan* (C.A.6, 1988), 850 F.2d 1104.

▮ The jurors in this case were given a general instruction directing them to reach a unanimous verdict on the count of kidnapping. Normally, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability. See *United States v. Schiff* (C.A.2, 1986), 801 F.2d 108, 114–115; but, see, *Beros,* 833 F.2d at 461.

In *Fryer v. Nix* (C.A.8 1985), 775 F.2d 979, 992, the court rejected the rationale in *Gipson,* stating: "The mere fact * * * that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict." Furthermore, in *United States v. Schiff, supra,* the court found a general unanimity instruction adequate except in cases where the "complexity of the evidence or other factors create a genuine danger of jury confusion." *Schiff,* 801 F.2d at 114–115. This case does not involve facts so complex that the jury would be confused by the evidence. Nor does the record indicate that the jury requested any clarifications during its deliberations, as was the case in *Gipson,* which would demonstrate any confusion.

Concordantly, in *Schad v. Arizona* (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, the Supreme Court of the United States criticized the holding in *Gipson,* calling the distinct conceptual groupings referred to by the court in *Gipson* "too indeterminate to provide concrete guidance to courts faced with verdict specificity questions" and generally "too conclusory to serve as a real test." *Id.* at 635, 111 S.Ct. at 2498–2499, 115 L.Ed.2d at 568.

The defendant in *Schad* was convicted of first-degree murder after the prosecution advanced theories of premeditated and felony murder. No instruction was given to the jurors requiring them to unanimously find the defendant guilty of first-degree murder based on one of these proposed theories. The Supreme Court found that different mental states of moral and practical equivalence, as in the case of premeditated and felony murder, may serve as alternative means to satisfy a *mens rea* element of high culpability for the single offense of

murder without infringing the constitutional rights of the defendant. *Schad,* 501 U.S. at 644–645, 111 S.Ct. at 2503–2504, 115 L.Ed.2d at 573–574.

In coming to this conclusion, the Supreme Court stated:

"We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In theses cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' *McKoy v. North Carolina,* 494 U.S.433, 449 [110 S.Ct. 1227, 1236–1237, 108 L.Ed.2d 369, 384–385] (1990) (Blackmun, J., concurring) (footnotes omitted).

"* * *

"That is not to say, however, that the Due Process Clause places no limits on a State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense, thereby permitting a defendant's conviction without jury agreement as to which course or state actually occurred. The axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning, carries the practical consequence that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge against him." (Citations omitted.) *Id.* at 631–633, 111 S.Ct. at 2497, 115 L.Ed.2d at 565–566.

The real issue behind the concern for jury unanimity is whether the state acted within permissible constitutional limits in defining the criminal conduct in the first instance. *Id.* at 631, 111 S.Ct. at 2496-2497, 115 L.Ed.2d at 565. When determining whether a statute is properly defined by its elements, the Supreme Court began its analysis with the presumption that legislatures are competent to define elements of a crime. *Id.* at 638, 111 S.Ct. at 2500, 115 L.Ed.2d at 569. The legislative decisions regarding what facts are necessary to constitute a crime and therefore must be proved individually as elements, and what facts are mere means to satisfy a particular element, were then compared to history and current widely shared practice to determine whether a state has exceeded its discretion in defining the offense. *Id.* at 640, 111 S.Ct. at 2501–2502, 115 L.Ed.2d at 570–571. This is to determine when two forms of conduct are so disparate as to exemplify two inherently separate offenses. *Id.* at 643, 111 S.Ct. at 2503, 115 L.Ed.2d at 572–573.

We begin our review of the kidnapping charge in this case with the presumption that the Ohio legislature correctly defined the necessary elements of the

kidnapping offense. In *State v. Logan* (1979), 60 Ohio St.2d 126, 129, 14 O.O.3d 373, 374–375, 397 N.E.2d 1345, 1348–1349, the Supreme Court of Ohio outlined the historical background to the crime of kidnapping, stating:

"At common law, kidnapping was defined as the 'forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another.' 4 Blackstone's Commentaries 219.

"In 1866, the General Assembly enacted this state's first general kidnapping statute, which apparently required the victim's asportation from the state or the imprisonment of the victim with the intent of removing him from the state (63 Ohio Laws 16).

"The next significant development in the law of kidnapping occurred in 1902, when the element of asportation was eliminated. The statute, as amended, prescribed imprisonment for one to twenty years for one who 'kidnaps, or forcibly or fraudulently carries off, detains or decoys any person * * *' (95 Ohio Laws 100)."

█ Today, the kidnapping statute embodies the same concepts as those in past versions, providing that "[n]o person, by force, threat, or deception * * * shall remove * * * or restrain the liberty of the other person, for any of the following [five] purposes." R.C. 2905.01. The inclusion of the five purposes in R.C. 2905.01 requires the state to show that the accused had a specific purpose in restraining the victim's liberty. This element of intent distinguishes kidnapping from abduction, described in R.C. 2905.02.

Given the long history of the definition of kidnapping and the widespread use of the definition, it is unlikely that appellant could demonstrate that he could not determine the inherent elements of the crime, or that the state has defined as a single crime multiple offenses that are inherently separate. Furthermore, although five possible purposes are listed in the statute to satisfy the *mens rea* element, we find that these various purposes listed reflect notions of equivalent blameworthiness or culpability. "[W]hereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses," the fact that we find that an equivalence exists is enough to rule out the argument that it would be unfair to treat them as alternative means to satisfy the mental element of a single offense. See *Schad*, 501 U.S. at 643–644, 111 S.Ct. at 2503–2504, 115 L.Ed.2d at 573. Consequently, whether the jury found that the kidnapping occurred during the rape or after, for any of the prohibited purposes listed in R.C. 2905.01(A)(2), (3), or (4), does not affect the integrity of the jury's unanimous verdict, since the "jury's options in this case did not fall beyond the constitutional bounds of fundamental fairness and rationality." *Id.* at 645, 111 S.Ct. at 2504, 115 L.Ed.2d at 574.

■ Furthermore, the United States Supreme Court has also held that when a jury returns a verdict on an indictment charging several acts in the conjunctive, the verdict can stand as long as the evidence is sufficient with respect to any of the acts charged. *Turner v. United States* (1970), 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610, 625–626. We find the evidence in the case *sub judice* sufficient to support appellant's conviction under R.C. 2905.01(A)(2), (3), and (4). In accordance with *Schad* and *Turner*, we find that appellant was afforded a unanimous verdict. Appellant's second assignment of error is overruled.

### Assignment of Error No. 3

"Appellant was deprived of a fair trial and due process as guaranteed by the Ohio and U.S. Constitutions, due to the ineffective assistance of counsel."

In his third assignment of error, appellant argues he was denied effective assistance of trial counsel. He cites the following errors by trial counsel as evidence of ineffectiveness: (1) counsel failed to request a more specific bill of particulars or to make a discovery request; (2) because counsel relied on a nonspecific bill of particulars, counsel failed to adequately identify the prosecution's theory that a kidnapping occurred after the rape, thereby prejudicing appellant's preparation of a defense; (3) counsel failed to file a timely motion to suppress; (4) counsel failed to take remedial action to object to or otherwise clarify the jury instructions on the kidnapping charge.

■ In a claim of ineffective assistance of counsel, the burden is on appellant to prove that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. The Supreme Court of Ohio has held that counsel's performance is deficient if it falls below the objective standard of reasonable representation. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In order to show prejudice, the appellant must demonstrate that there exists a reasonable probability that were it not for counsel's poor performance, the outcome of the trial would have been different. *Id.* at paragraph three of the syllabus.

■ We find no evidence of ineffective assistance of counsel in this case. As we have previously discussed, appellant was not prejudiced by the bill of particulars issued by the prosecution. In addition, since discovery was forthcoming by the state, trial counsel was not ineffective in failing to make a superfluous request for discovery. The discovery packet provided by the state included a confession by appellant and a police summary that foretold the state's case in detail. It cannot be claimed that appellant was prejudiced by surprise at trial, nor can it be claimed that appellant's trial counsel was unaware of facts which

supported the state's claim that a kidnapping took place separate from the rape. Appellant decided on a defense of consent as to all the charges, including kidnapping. This defense will not be second-guessed by this court simply because it was not successful. "[S]trategy and tactical decisions exercised by defense counsel 'well within the range of professionally reasonable judgment' need not be analyzed by a reviewing court." *State v. Walker* (1993), 90 Ohio App.3d 352, 359, 629 N.E.2d 471, 475, quoting *Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070–2071, 80 L.Ed.2d at 700–701. Likewise, although trial counsel was untimely in filing a motion to suppress, appellant presents no argument that a meritorious basis for the motion ever existed or that he was prejudiced by the failure to file the motion. Finally, as we have also previously concluded in our discussion of appellant's second assignment of error, the charge given to the jury was not incorrect or prejudicial to appellant. As a result, trial counsel cannot be deemed ineffective for failing to object to or request an augmented jury instruction. Appellant's third assignment of error is overruled.

Assignment of Error No. 4

"The sentence is contrary to law, as the record supports neither the consecutive maximum sentences, nor the sexual predator classification, which is authorized by an unconstitutionally vague statute."

Appellant presents two arguments under this assignment of error, one dealing with his sentence and the other concerning the sexual-predator statute and his sexual-predator classification. We will address these issues separately, beginning with his argument that his sentences for the rape, aggravated burglary, robbery, and kidnapping convictions were contrary to law.

Appellant was sentenced to ten years in prison on each count of rape, aggravated burglary, and kidnapping. The trial court ordered these sentences to run consecutive to each other. Appellant was also sentenced to eight years in prison for the robbery offense. This sentence was ordered to run concurrently with all other counts. Appellant contends that the record does not support the maximum consecutive sentences he received. He also argues that the court did not consider each offense separately when weighing the seriousness and recidivism factors under the sentencing guidelines, and instead erroneously found that the sentencing factors applied equally to every count.

According to R.C. 2929.11, the two overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender. When sentencing an offender, the trial court is granted broad discretion in determining the most effective way to uphold these objectives. R.C. 2929.12(A). The trial court is guided in its discretion by subsections (B), (C), (D), and (E) of R.C. 2929.12, which enumerate factors the court should consider when judging the

seriousness of the conduct constituting the offense and the likelihood of the offender's recidivism. On appeal, this court is granted the authority under R.C. 2953.08(G)(1)(a) to increase, reduce, or otherwise modify a sentence if we find by clear and convincing evidence that the record does not support the sentence imposed.

R.C. 2929.12(B) lists eight factors indicating that a defendant's conduct should be considered "more serious than conduct normally constituting the offense." Of these eight, the trial court found R.C. 2929.12(B)(2) relevant to appellant's case, since the "victim of the offense suffered serious physical, psychological, or economic harm as a result" of each individual crime of rape, aggravated burglary, robbery, and kidnapping. The court found none of the factors listed in R.C. 2929.12(C) applicable to appellant to indicate that his conduct was less serious than conduct normally constituting the offense.

 We find these findings supported in the record as to all counts except the robbery conviction. The record reveals that appellant took $2 off a coffee table before exiting Johnson's apartment. At the time, Johnson was barricaded in the bathroom and did not know that appellant had robbed her. We find that the evidence supports the conclusion that the serious physical and psychological harm experienced by Johnson was suffered in connection with the rape, aggravated burglary, and kidnapping, and not the robbery of $2, of which Johnson was unaware until after the attack.

When balancing the recidivism factors, the trial court found that appellant had prior convictions under R.C. 2929.12(D)(2), and lacked remorse under R.C. 2929.12(D)(5). These are factors that indicate that appellant is likely to commit future crimes. In addition, the court also found it germane that appellant committed the current offenses within hours of being sentenced for other unrelated crimes. Again, the court found none of the factors listed in R.C. 2929.12(E) applicable to appellant's case to indicate that he is less likely to commit future crimes. We agree with the trial court that these findings apply equally to all four convictions.

The court went on to find that more than the minimum prison term was necessary on all counts so as not to demean the seriousness of the offense and to adequately protect the public. R.C. 2929.14(B). Pursuant to R.C. 2929.14(C), before imposing the maximum sentences on appellant for all four counts, the court found that appellant posed the greatest likelihood of committing future crimes. Finally, the court noted appellant's criminal history in finding that consecutive sentences for the rape, aggravated burglary, and kidnapping were necessary to fulfill the purposes of Ohio's felony sentencing laws.

■ Given appellant's criminal history and the facts surrounding his current four convictions, we find that the trial court had a reasonable basis for imposing the sentences that it did with the possible exception of the maximum penalty assessed for the robbery charge. However, even if we find by clear and convincing evidence that the record does not support the maximum sentence imposed for the robbery, it would have no affect on appellant's sentence, since the time imposed for this count is to be served by appellant concurrently with the other counts. Consequently, we find any error in this regard to be harmless.

Appellant also claims that he should not have been classified as a sexual predator because the statute under which this finding was predicated is unconstitutionally vague. In particular, appellant challenges the factors listed in R.C. 2950.09(B)(2).

A "sexual predator" is defined in R.C. 2950.01(E) as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Before a person is classified a sexual predator, a hearing is conducted in accordance with R.C. 2950.09(B). Under R.C. 2950.09(B)(1), the defendant is afforded notice and an opportunity to be heard at the hearing and to be represented by counsel. R.C. 2950.09(B)(2) instructs the trial court to consider the following factors when making its sexual-predator determination:

"(a) The offender's age;

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

"(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

"(g) Any mental illness or mental disability of the offender;

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and where the

sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

"(j) Any additional behavioral characteristics that contribute to the offender's conduct."

After reviewing these factors as they apply to the case, the trial court must determine by clear and convincing evidence whether the offender is a sexual predator. R.C. 2950.09(B)(3).

Appellant argues that R.C. 2950.09(B)(2) provides no insight to the trial court on how to apply such factors as, for example, a victim's or offender's age in a sexual-predator determination. Appellant claims that without guidance to trial courts on how to weigh the factors in R.C. 2950.09(B)(2), in terms of for or against a sexual-predator determination, the result will be unfair, disparate sexual-predator findings among different jurisdictions.

■■■■ We begin our analysis of appellant's claim of vagueness by recognizing that all legislative enactments enjoy a presumption of constitutionality. *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553–554; *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226–1227. A statute challenged as vague will be held invalid when it is "so vague that [persons] of common intelligence must necessarily guess at its meaning." *Connally v. General Constr. Co.* (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328. The due process doctrine of vagueness incorporates notions of fair notice or warning together with the requirement that legislatures set reasonably clear guidelines to prevent official arbitrariness or discrimination in a statute's enforcement. *Smith v. Goguen* (1974), 415 U.S. 566, 572–573, 94 S.Ct. 1242, 1246–1247, 39 L.Ed.2d 605, 611–612.

"[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Footnotes omitted.) *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227–228.

■■■■ Because appellant claims that R.C. 2950.01(B)(2) is vague on its face, appellant must demonstrate that the statute implicates constitutionally protected conduct or that it is vague in all its applications. *Hoffman Estates v. Flipside, Hoffman Estates* (1982), 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362, syllabus;

*Collier,* 62 Ohio St.3d at 272, 581 N.E.2d at 555–556. appellant makes no claim that R.C. 2950.01(B)(2) implicates constitutionally protected conduct. Therefore, we must evaluate appellant's claim of vagueness by determining whether the statute is vague in all its applications. It is appellant's burden to show that "the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Anderson,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226, quoting *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217.

We are mindful that scientific precision is not required of statutory wording. *Perez v. Cleveland* (1997), 78 Ohio St.3d 376, 378, 678 N.E.2d 537, 539– 540, citing *Anderson,* 57 Ohio St.3d at 174, 566 N.E.2d at 1229. A statute's certainty can be "ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." *Perez,* 78 Ohio St.3d at 378–379, 678 N.E.2d at 540, citing *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150– 151, 446 N.E.2d 449, 450–451.

R.C. 2950.09(B)(2) does not proscribe conduct or otherwise define an offense. Rather, the statute is a list of factors that may or may not be relevant to a court, given the facts of the particular case, when making a sexual predator determination. Because each sexual-predator determination is fact-specific, the framework provided to the courts in the statute must be broadly worded to accommodate both the most common and the most exceptional cases. As a result, a factor such as the victim's age, which appellant cites as an example of a vague statutory component, may reveal itself as relevant only as the facts of a particular case permit. Nevertheless, the use of judicial analysis in applying these factors to each case, while a somewhat discretionary proposition, does not render the statute vague.

Likewise, the fact that R.C. 2950.09(B)(2) is not exhaustive and allows courts to consider factors not enumerated in the statute when making a sexual-predator determination does not render the statute vague. The latitude granted courts in this regard is not endless, since the statute demands that the factors used by the court be relevant to the determination. Consequently, although R.C. 2950.09 vests discretion in the trial court when making a sexual-predator determination, we do not find that discretion is so unbridled that it provides no standard at all or otherwise "delegates basic policy matters to * * * judges * * * for resolution on an ad hoc and subjective basis." *Grayned,* 408 U.S. at 108–109, 92 S.Ct. at 2299, 33 L.Ed.2d at 228. We further note that protection against arbitrary or discriminatory application of the factors can be found in the principle of *stare decisis* and through appellate review. See *Perez,* 78 Ohio St.3d at 379, 678

N.E.2d at 540. Given the foregoing analysis, we find no merit in appellant's claim that R.C. 2950.09(B) is void for vagueness. Appellant's fourth assignment of error is overruled.

Having found no error prejudicial the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW, P.J., and HADLEY, J., concur.