[Cite as *State v. Choudri*, 2023-Ohio-4476.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

MARYUM CHOUDRI,

    DEFENDANT-APPELLANT.

CASE NO. 9-22-70


O P I N I O N


Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 22-CR-006

Judgment Affirmed

Date of Decision: December 11, 2023


APPEARANCES:

    *Kyle Phillips* for Appellant

    *Raymond A. Grogan, Jr.* and *Martha Schultes* for Appellee

**MILLER, P.J.**

{¶1} Defendant-appellant, Maryum Choudri ("Choudri"), appeals her conviction for trespass-in-a-habitation, in violation of R.C. 2911.12(B), following a jury trial in the Marion County Court of Common Pleas. Choudri argues the trial court erred in denying her Crim.R. 29 motion to dismiss; entering judgment against her because the verdict was not supported by the manifest weight of the evidence; and permitting the State to advance an alleged "new theory" after the close of the State's case-in-chief. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. Choudri's Actions Concerning the Premises

{¶2} Although she lived in New York, Choudri was the landlord for a house located at 507 Silver Street in Marion, Ohio. William Brammer ("Brammer") was the tenant.[1] In or around September of 2021, Brammer complained to Choudri that the hot water tank at the house was broken. Choudri told Brammer to arrange for someone to fix it and then she would wire money for the repair.

{¶3} On December 29, 2021, after not hearing anything further from Brammer and not receiving rent, Choudri decided to visit the rental property for the first time. Although she was unsuccessful in notifying Brammer of her intended visit, she left her home in New York and drove to the rental property in Marion,

---

[1] No lease agreement was entered into evidence at trial.

Ohio. Significantly, Choudri made two separate entries into the house on that day. Regarding the first entry, she gained admittance into the residence and spoke with Brammer about the hot water tank. At some point thereafter, a physical altercation ensued between Choudri and Brammer, after which she exited the house. The details of the first entry—including whether Brammer had invited Choudri into the house, why the physical altercation happened, whether Choudri touched or grabbed Brammer, and whether she was thrown down the front porch stairs by Brammer— involved disputed evidence at trial.

{¶4} Before the second entry, Choudri called 911 multiple times. In response to the 911 calls, Officer Dana Jagger of the Marion City Police Department ("Officer Jagger") came to the house. As Officer Jagger approached the house, she saw Choudri on the front porch kicking the front door. As shown on Officer Jagger's bodycam video (which was played during the trial and admitted into evidence as State's Exhibit 1), Choudri told Officer Jagger she owned the house and Brammer had thrown her down the porch stairs in front of the house. Officer Jagger instructed Choudri to come to another location in the front yard so they could talk outside the presence of Brammer (who came onto the porch once Officer Jagger arrived). However, Choudri responded to Officer Jagger's instruction by walking back onto the porch saying, "I have to use the restroom, I'm gonna go in my home and use that." At that point, Brammer was standing in the doorway, blocking entry

to the house, and closing the door, all while repeatedly saying he did not want Choudri to come into his house.

**{¶5}** While Officer Jagger was continuously instructing Choudri to stop, Choudri touched Brammer and pushed past him to get into the house. Upon entering the house, Officer Jagger told Choudri she would be put into handcuffs, to which Choudri responded, "Okay, fine." After Choudri continued through the front room of the house, she was stopped by Officer Jagger and a second police officer. A struggle ensued, with the officers eventually bending Choudri over a table in the front room to handcuff her. Once Choudri had been removed from the house by other officers, Brammer told Officer Jagger on her bodycam video that Choudri was a "slum landlord"; he refused to pay rent until she fixed the hot water; Choudri owns the house but did not belong there and did not live there; Choudri had kicked his front door and—while he pointed to the ground in the entranceway—she had just damaged his phone; and, during the first entry, Choudri had physically thrown his cat out of the house and punched him in the nose.

### B. Indictment, Trial, Conviction, and Sentencing

**{¶6}** On January 5, 2022, Choudri was indicted on three counts: (1) Aggravated Burglary in violation of R.C. 2911.11(A)(1); (2) Burglary in violation

of R.C. 2911.12(A)(2); and (3) Obstructing Official Business in violation of R.C.

2921.31(A).[2] Regarding Counts 1 and 2, the Indictment stated:

> **Count One   Aggravated Burglary – F1** § 2911.11(A)(1),
> 2911.11(B)
>
> **Defendant**   Maryum Choudri
>
> **Date of Offense**      On or about December 29, 2021
>
> did, by force, stealth, or deception, trespass, as defined in section
> 2911.21(A)(1) of the Revised Code, in an occupied structure or in a
> separately secured or separately occupied portion of an occupied
> structure, when Tina Frost [Brammer's daughter] and William
> Brammer, a person other than the accomplice, was present, with
> purpose to commit in the structure or in the separately secured or
> separately occupied portion of the structure any criminal offense, to
> wit: Criminal Damaging, RC 2909.06(A)(1), and the offender
> inflicted, or attempted or threatened to inflict physical harm on
> William Brammer.
>
> **Count Two   Burglary – F2** § 2911.12(A)(2), 2911.12(D)
>
> **Defendant**   Maryum Choudri
>
> **Date of Offense**      On or about December 29, 2021
>
> did, by force, stealth, or deception, trespass in an occupied structure
> or in a separately secured or separately occupied portion of an
> occupied structure that is a permanent or temporary habitation of any
> person when any other person, not the accomplice of the offender
> was present or likely to be present, with purpose to commit in the
> habitation any criminal offense, to wit: Criminal Damaging, RC
> 2909.06(A)(1).

(Indictment).

---

[2] Count 3 is not germane to this appeal.

{¶7} On January 27, 2022, the State supplied a bill of particulars at Choudri's request. Counts 1 and 2, the Bill of Particulars repeated the same language as the Indictment, although the Bill of Particulars additionally identified the location of the offenses as being at 507 Silver St., Marion, OH 43302. Also on January 27, 2022, the State responded to Choudri's request for discovery. As part of its discovery response, the State delivered to Choudri four officer bodycam videos, including the one from Officer Jagger that had recorded (among other things) Officer Jagger's arrival at the house, Officer Jagger's discussion with Choudri outside the house, Choudri's second entry into the house, the removal of Choudri from the house, and the discussion between Officer Jagger and Brammer. On October 31, 2022, the State supplemented its response to Choudri's request for discovery, delivering to Choudri three recordings of the 911 calls.

{¶8} It appears from the transcripts that the parties submitted proposed jury instructions prior to trial. (*See* Oct. 17, 2022 Tr. at 5-6 (trial judge requesting the parties submit proposed jury instructions two days prior to trial); Nov. 1, 2022 Tr. at 369-70; Nov. 2, 2022 Tr. at 441-42). The parties did not want jury instructions regarding a lesser-included offense for Count 1, but they both desired jury instructions regarding a lesser-included offense of trespass-in-a-habitation for Count 2. (Nov. 2, 2022 Tr. at 441-42).

{¶9} The matter proceeded to a three-day jury trial starting on November 1, 2022. Both parties discussed Choudri's second entry into the home during

opening statements. Choudri's counsel told the jury that: Brammer tried to keep Choudri from walking back into the house; Choudri was trying to avoid Brammer and get through the house so she could use the bathroom to urinate; Brammer dropped his phone and it fell to the porch; and "[a]ll that's gonna be in evidence for you to see." (Nov. 1, 2022 Tr. at 209). Choudri's counsel also said the following during opening statements: "At all points in time, Miss Choudri had privilege to be there, had a duty to be there by law, because she's the landlord that has to fix things," she "[n]ever trespassed on the property," and she "never committed any criminal offenses inside the property." (*Id.* at 212-13).

{¶10} The State called Brammer as a witness during its case-in-chief. Regarding the first entry, he testified that Choudri knocked on the front door, he opened it, and she shoved her way into the house. (Nov. 1, 2022 Tr. at 227-28). According to Brammer, he did not invite her into the house. (*Id.*) Regarding the second entry, Brammer testified that, after the police showed up, Choudri tried to force her way back into the house. (*Id.* at 219). Brammer testified a "brawl" ensued between Choudri and the police, and "[t]hat's when she broke my phone." (*Id.* at 219-21 and 240). He also testified that his front room was torn up—including a table and chair being broken—when Choudri struggled with police officers. (*Id.* at 246-47).

{¶11} Following the close of the State's case-in-chief, but prior to Choudri's Rule 29 motion, the trial judge asked if Count 1 and Count 2 referred to one

particular entry by Choudri into the house or to both entries. The State replied that Count 1 applied to the first entry and Count 2 applied to the second entry. Choudri's counsel responded, "that's not what the filed bill of particulars indicated at all" and there was "no distinction" in the bill of particulars. (Nov. 1, 2022 Tr. at 371). Counsel claimed the State was offering an "alternative theory" of its case. The trial judge disagreed, finding the State was not prohibited from presenting its theory that Count 1 applied to the first entry and Count 2 applied to the second entry.

{¶12} Choudri then made a motion under Rule 29 for the entire case to be dismissed, arguing there was no trespass because Choudri had a privilege to be in the house. The trial court denied the motion. Following the close of Choudri's case and closing arguments, the trial judge gave the jury instructions, including instructions on trespass-in-a-habitation as a lesser-included offense for Count 2, a landlord's statutory obligations as delineated in R.C. 5321.04(A), and privilege to enter upon the property under certain circumstances. The jury found Choudri not guilty of aggravated burglary, burglary, and obstructing official business. However, the jury found Choudri guilty of the lesser-included offense of trespass-in-a-habitation, in violation of R.C. 2911.12(B), a fourth-degree felony. The trial court sentenced Choudri to 18 months of community control, subject to the general supervision of the Adult Probation Department. This appeal followed.

## II.   ASSIGNMENTS OF ERROR

{¶13} Choudri filed her notice of appeal with the trial court on December 20, 2022.  She raises three assignments of error for our review:

### First Assignment of Error

**The trial court erred when it failed to grant Defendant-Appellant Maryum Choudri's Criminal Rule 29 motion to dismiss as the case presented by the State of Ohio was not supported by sufficient evidence.**

### Second Assignment of Error

**The trial court erred when it entered judgment against Defendant-Appellant Maryum Choudri as the verdict was not supported by the manifest weight of the evidence.**

### Third Assignment of Error

**The trial court erred to the substantial prejudice of Defendant-Appellant Maryum Choudri in permitting the State to advance a new theory not presented to Defendant-Appellant in the Indictment or Bill of Particulars after the close of the State's Case in Chief.**

## III.   DISCUSSION [3]

### A.   First Assignment of Error

{¶14} In her first assignment of error, Choudri argues the trial court erred in denying her Crim.R. 29 motion.  She contends the State failed to present sufficient evidence to support a conviction for trespass-to-a-habitation.  According to Choudri, due to her "non-delegable duty as a landlord, she held a valid privilege to be present at the property to inspect and/or repair the issues with Mr. Brammer's hot water

---

[3] Choudri clarified that her arguments on appeal are limited to Count Two for Burglary in violation of R.C. 2911.12(A)(2) (for which Choudri was not found guilty) and the lesser-included offense of trespass-in-a-habitation in violation of R.C. 2911.12(B) (for which Choudri was found guilty).

heater," and "the State failed to provide evidence sufficient to overcome Ms. Choudri's privilege to be present on the property for purposes of repairs that would warrant a conviction for trespass" to a habitation. (Appellant's Brief at 9, 15). Through her argument, she implies that her being the landlord for the property also granted her the privilege to use the bathroom.

### i.     Standard of Review

{¶15} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995) and *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A sufficiency challenge disputes whether a party met its burden of production at trial. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 3d Dist. Allen No. 1-22-27, 2023-Ohio-2193, ¶ 26; *see also Jenks* at 279.

**{¶16}** Under Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." The referenced "offenses charged in the indictment" include lesser-included offenses. *State v. Lytle*, 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990) (an indictment on a greater offense "necessarily and simultaneously charges the defendant with lesser included offenses as well"). Additionally, "[w]hen an appellate court reviews a Crim.R. 29 motion, the motion should be reviewed in the context of whether the evidence presented supported the offense for which the defendant was convicted." *State v. Schellentrager*, 8th Dist. Cuyahoga No. 105652, 2017-Ohio-9275, ¶ 11. Therefore, we must decide whether the evidence presented would have allowed any rational trier of fact to find the essential elements of trespass-in-a-habitation proven beyond a reasonable doubt. *Id.* at ¶ 1-2, 11 (where defendant-appellant was found not guilty of the greater offense but guilty of the lesser-included offense, the issue on appeal was not whether the evidence was sufficient following the state's case to support a conviction for the greater offense, but whether the trial court should have granted the motion for acquittal with respect to the lesser-included offense).

### ii. Applicable Law

{¶17} The statute prohibiting trespass-in-a-habitation states: "No person, by force * * * shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." R.C. 2911.12(B). Thus, unlike burglary, trespass-in-a-habitation does *not* require the State to prove the defendant acted "with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2).[4]

{¶18} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). One way a person can commit a "trespass" is by "[k]nowingly enter[ing] or remain[ing] on the land or premises of another," "without privilege to do so." R.C. 2911.21(A)(1). And, "'[p]rivilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶19} A person's privilege to enter or remain on the land or premises of another can be revoked or terminated. *State v. Bryant*, 3d Dist. Allen No. 1-21-25,

---

[4] Regarding the burglary charge, the applicable statute states: "No person, by force * * * shall * * * [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2); *see also* R.C. 2911.21(F)(2) (definition of "land or premises"). Here, the specific "criminal offense" alleged in Count 2 was criminal damaging. The statute regarding criminal damaging provides that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means." R.C. 2909.06(A)(1); *see also* R.C. 2901.22(B) (definition of "knowingly"). The judge instructed the jurors at trial that the criminal offense at issue, for both Count 1 and Count 2, was "criminal damaging or disorderly conduct." (Nov. 3, 2022 Tr. at 602-04).

2022-Ohio-418, ¶ 9 (affirming conviction for criminal trespass). "[W]hile a person's presence at the property may be initially lawful, it can, nonetheless, morph into trespass if that privilege is revoked or terminated." *Id.*, citing *State v. Petefish*, 7th Dist. Mahoning No. 10 MA 78, 2011-Ohio-6367, ¶ 22.

{¶20} A landlord has various obligations, including to "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." R.C. 5321.04(A)(2). However, another obligation is that, "[e]xcept in the case of emergency or if it is impracticable to do so, [the landlord shall] give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times." R.C. 5321.04(A)(8). "Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary." *Id.*; *see also Spencer v. Blackmon*, 22 Ohio Misc.2d 52, 53, 490 N.E.2d 943 (M.C. 1985) (any "emergency" under the statute must be a "bona fide emergency").

### iii.    Analysis

{¶21} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements for trespass-in-a-habitation proven beyond a reasonable doubt against Choudri. Specifically, the evidence in the State's case-in-chief—including State's Exhibit 1 (Officer Jagger's bodycam video)—showed that Choudri, by force, trespassed in a permanent or temporary habitation of another person (Brammer's home) when a person other than

-13-

an accomplice was present (Brammer) and she knowingly entered the premises (Brammer's home) without privilege to do so. R.C. 2911.12(B).

**{¶22}** As shown above, the focus of Choudri's argument on appeal is the assertion she held a valid privilege to go into the house and the State did not provide sufficient evidence to overcome that privilege. We disagree with Choudri. Even if we assume Choudri *initially* held a valid privilege to make the first entry into the house (based on Choudri's assertions that Brammer invited her into the house and/or she was there as the landlord to inspect or repair the hot water tank), any such privilege does not apply to the second entry. First, Brammer clearly revoked any privileges he may have provided. *Bryant*, 2022-Ohio-418, at ¶ 9. Officer Jagger's bodycam video shows Brammer closing the door to the home and blocking the entrance—all while repeatedly saying he did not want Choudri to come into the house. Second, Officer Jagger's bodycam video also shows Choudri's stated purpose for trying to reenter the home was because she had to use the restroom, *not* because she was attempting to inspect or repair the hot water tank as the landlord.[5] *See State v. MacDonald*, 9th Dist. Summit No. 14822, 1991 WL 35141, *2 (Mar. 6, 1991) (under the criminal trespass statute, a privilege to enter or remain on another's land or premises may be restricted to certain areas).

---

[5] Looking to the statute on which Choudri relies for her privilege argument, using the restroom in a house you lease to someone else is not identified as a landlord's privilege, as compared to, for example, making "all repairs and do[ing] whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." *See* R.C. 5321.04; *see also* R.C. 5321.05(A) (among the obligations of a tenant, listing "not unreasonably withhold[ing] consent for the landlord to enter into the dwelling unit" for particular purposes specified in the statute).

{¶23} Additionally, Choudri never provided Brammer with "reasonable notice of [her] intent to enter" the house, as required by R.C. 5321.04(A)(8), and she does not attempt to argue an exception to that requirement applied. The "reasonable notice" requirement also demonstrates that a landlord does not have an absolute right to enter the house whenever he or she wants. R.C. 5321.04(A)(8); *see also State v. Lilly,* 87 Ohio St.3d 97, 102-03, 717 N.E.2d 322 (1999) (defendant-husband could be found criminally liable for trespassing, despite having statutory privilege to access his spouse's dwelling); *Petefish*, 2011-Ohio-6367, at ¶ 22 (defendant criminally trespassed in his ex-spouse's apartment where his daughter lived, even though defendant was allowed to store property there and had conditional privileges within the apartment, including sometimes being allowed to sleep, shower, and eat there).

{¶24} Choudri also cites R.C. 5321.04(B), which provides tenants with a civil remedy for a landlord's violating R.C. 5321.04(A)(8), and argues it was error to find her guilty when "there exists adequate civil remedies for the purported violation." (Appellant's Brief at 16). However, simply because Brammer may have the ability to file a civil action against Choudri and recover financial damages for her conduct does not necessarily preclude the State from bringing criminal charges against Choudri for the same conduct. *See, e.g., Phillips v. Rayburn*, 113 Ohio App.3d 374, 376, 680 N.E.2d 1279 (4th Dist.1996) (victim of aggravated assault filed civil action for assault and battery against the perpetrator, after the perpetrator

had been tried and convicted of aggravated assault); *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 6 (R.C. 2307.60 authorizes a civil action for damages caused by criminal acts, unless otherwise prohibited by law). To support her argument, Choudri quotes from a Twelfth District opinion: "[c]riminal trespass statutes do not afford a substitute for other adequate civil remedies for trespass." *State v. Hohman*, 14 Ohio App.3d 142, 143, 470 N.E.2d 162 (12th Dist.1983). However, in addition to the fact *Hohman* did not involve any charge except criminal trespass, that case is distinguishable because it arose from a criminal complaint filed by a private citizen (not an indictment issued by a grand jury). *Id.* at 142. The appellate court in *Hohman* found the State had failed to show proof beyond a reasonable doubt that the defendant was without privilege to be at a nursing home (the premises at issue) because evidence indicated several nursing home residents had requested his presence there. *Id.* at 143. The quote relied on by Choudri was dicta from the appellate court, used to express its disapproval for what it found "was not an appropriate remedy for the situation presented." *Id.*

{¶25} Choudri's first assignment of error is overruled.

### B. Second Assignment of Error

{¶26} In her second assignment of error, Choudri contends her conviction for trespass-in-a-habitation was not supported by the manifest weight of the evidence and, therefore, must be reversed. As with her sufficiency-of-the-evidence argument addressed above, Choudri relies on the assertion that she had a valid

privilege to be present on the property as a landlord for the purpose of inspecting and/or repairing the hot water tank, so she cannot be found guilty of the offense.

### i. Standard of Review

**{¶27}** The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, at ¶ 26. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168, citing *Thompkins*, 78 Ohio St.3d at 387. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### ii. Analysis

**{¶28}** For the same reasons we rejected Choudri's sufficiency-of-the-evidence argument, we reject Choudri's manifest-weight-of-the-evidence argument. In short, the evidence (particularly State's Exhibit 1—Officer Jager's bodycam video) establishes, beyond a reasonable doubt, the elements of the offense and that Choudri's entry was not privileged to simply enter the residence for the purpose of

using the restroom. We do not find the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Choudri's second assignment of error is overruled.

## C. Third Assignment of Error

{¶29} In her third assignment of error, Choudri argues that, due to the alleged lack of specificity in the Bill of Particulars, she was unaware until after the close of the State's case-in-chief that the charges in Count 2 arose from the second entry into Brammer's house. Therefore, according to Choudri, she "was not adequately informed regarding the nature and cause of the accusation against her and was prejudiced by the lack of clarity and specificity within the Indictment and/or the Bill of Particulars." (Appellant's Brief at 23).

### i. Applicable Law

{¶30} "Even if the bill of particulars is insufficient in itself, the defendant must show that lack of knowledge of certain facts required to be placed in the bill of particulars prejudiced his ability to fairly defend himself." *State v. Donkers*, 11th Dist. Portage Nos. 2003 P 0135 and 2003 P 0136, 2007-Ohio-1557, ¶ 140, citing *State v. Chinn*, 85 Ohio St.3d 548, 569, 709 N.E.2d 1166 (1999); *see also State v. Sellards*, 17 Ohio St.3d 169, 172, 478 N.E.2d 781 (1985) ("inexactitude" in a bill of particulars may be fatal "if the absence of specifics truly prejudices the accused's ability to fairly defend himself").

**{¶31}** Additionally, the Ohio Rules of Criminal Procedure provide that "[d]efenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense") must be raised before trial. Crim.R. 12(C)(2). If not raised before trial, then "our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B)." *State v. Avery*, 126 Ohio App.3d 36, 42, 709 N.E.2d 875 (3d Dist. 1998) (defendant-appellant alleged the bill of particulars was not specific enough to alert him to the prosecution's theory relating to one of the charges). Among other requirements to qualify for plain-error relief, the appellant must establish that the error affected the trial's outcome. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. "Notice of plain error under CrimR. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

### ii. Analysis

**{¶32}** We will assume, *without deciding*, that the Bill of Particulars here was insufficient. Specifically, we will assume the State needed to indicate in the Bill of Particulars—whether by identifying the exact time of the offense or otherwise—that Count 2 related to Choudri's second entry. We still must determine if Choudri has shown not knowing that fact prejudiced her ability to fairly defend herself. *E.g.*,

*Donkers*, 2007-Ohio-1557, at ¶ 140; *City of Mayfield Hts. v. Barry*, 8th Dist. Cuyahoga No. 95771, 2011-Ohio-2665, ¶ 45-46.

**{¶33}** We first address Choudri's assertion she was prejudiced because "the lack of specificity in the Bill of Particulars allowed the State of Ohio to continue to explore new theories of potential violations once others had not panned out in the State's case-in-chief." (Appellant's Brief at 23). This claim is mere speculation by Choudri. To us, it is possible the State's theory was simply one that Choudri's counsel failed to recognize until the trial court requested clarification prior to hearing Choudri's Crim.R. 29 motion. Choudri says Counts 1 and 2 had "identical phrasing" and that "identifying 'Criminal Damaging' as the listed criminal offense [in both counts] caused Ms. Choudri to believe both Counts were in reference to the allegation regarding Mr. Brammer's broken cell phone." (Appellant's Brief at 23). However, there is no mention of a cell phone in either the Indictment or the Bill of Particulars, and the two counts are not identical. For example, Count 1 (for aggravated burglary) alleges that Choudri inflicted, or attempted or threatened to inflict, physical harm on Brammer; Count 2 makes no such allegation.

**{¶34}** Furthermore, based on Officer Jagger's bodycam video, the language regarding Count 2 in both the Indictment and the Bill of Particulars corresponded with the second entry. Choudri was kicking the front door upon the officer's arrival. She ignored the officer's instructions and pushed her way past Brammer into the house where he was living. Brammer complains on the video that Choudri damaged

his cell phone as she entered the house the second time. Thus, Officer Jagger's bodycam video provided a basis to charge Choudri with burglary concerning the second entry.

{¶35} After receiving the Bill of Particulars and the bodycam videos, Choudri could have, but did not, request another bill of particulars with more specificity or file a motion asking the Court to compel the State to furnish a more specific bill of particulars. *See, e.g., Avery*, 126 Ohio App.3d at 42 ("[t]he record contains no motion filed by trial counsel objecting to the indictment or requesting a more specific bill of particulars," so, "[a]pparently, trial counsel was satisfied with the information contained therein"). Additionally, when the defendant is made aware during discovery of actions she is alleged to have committed that could support the charge filed against her, she is not denied the opportunity to defend against that charge and no prejudice results if she fails to complain about perceived insufficient language in the bill of particulars. *Id.* at 44

{¶36} Choudri also argues that, due to the alleged lack of clarity and specificity within the Indictment and/or the Bill of Particulars, her counsel had prepared for the trial under a singular entry theory. Therefore, according to Choudri, she was prejudiced in the presentation of her defense because she was allegedly "prohibited" from "eliciting testimony and evidence from the State's witnesses on a new two (2) separate entry theory" and "only questioned the State's witnesses under a singular entry theory." (Appellant's Brief at 23-24). However, Choudri

does not explain how she was "prohibited" from eliciting testimony and evidence from the State's witnesses regarding the second entry. Nor does the record bear out this claim. On the contrary, she recalled one of the State's witnesses in her case-in-chief. (*See* Nov. 2, 2022 Tr. at 343, 368, 482-83). Also, after discussing the second entry during opening statements, her counsel very effectively cross-examined the State's witnesses during the State's case-in-chief.

{¶37} Additionally, the record indicates Choudri's counsel was well-prepared for the trial, including offering evidence and setting forth her defenses from opening statements through the end of trial: Choudri always had a privilege to be in the house, never trespassed, and never committed any criminal offenses inside the property. *Mayfield Hts.*, 2011-Ohio-2665, at ¶ 47 (defendant failed to show he was prejudiced by the insufficient bill of particulars because the record indicated defendant's counsel was well-prepared for trial and offered witnesses to defend against the charge). Choudri does not argue she would have made any other defense to the charge of trespass-in-a-habitation had she known Count 2 related to the second entry. *City of Steubenville v. Whittaker*, 7th Dist. Jefferson No. 17 JE 0025, 2018-Ohio-4014, ¶ 31 (where appellant's defense to an assault charge at trial was that she was not present when the assault occurred, and defendant's counsel "had the means to find out" when the assault occurred, there was "no indication that the lack of a bill of particulars actually prejudiced appellant").

**{¶38}** Ultimately, although Choudri generally claims she was prejudiced by an alleged lack of clarity and specificity, she "fails to show how knowledge of certain facts omitted from the bill of particulars would have changed [her] defense." *Mayfield Hts.*, 2011-Ohio-2665, at ¶ 47. We find no prejudice to Choudri resulting from the language in the Indictment or Bill of Particulars. Therefore, Choudri's third assignment of error is overruled.

## IV. CONCLUSION

**{¶39}** For the foregoing reasons, Choudri's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**