OPINION
{¶ 1} Defendant-Appellant, Dairell Reynolds, appeals a judgment of conviction and sentence entered by the Allen County Common Pleas Court upon a finding of guilt for felonious assault of a peace officer with a firearm specification, pursuant to R.C. 2903.11(A)(2) and 2941.145(A). Reynolds contends that the verdict was both against the manifest weight of the evidence and that the evidence was not sufficient to sustain a conviction. However, review of the record reveals sufficient, competent, credible evidence supporting the jury's verdict. Reynolds further argues that he was represented by ineffective counsel, but Reynolds has failed to show that his counsel's representation was objectively unreasonable or that any alleged errors prejudiced the outcome of the trial. Accordingly, we affirm the decision of the trial court.
 {¶ 2} On the evening of March 14, 2002, Lima, Ohio Police Department Officers, Ronald Meister and Tiffany Woten, were dispatched to an apartment complex to investigate a 911 hang-up call from apartment number sixty-three. After knocking on the apartment door, Reynolds eventually answered and informed the officers that his girlfriend's children, who were no longer present, accidentally called 911. With Reynold's consent, the officers conducted a walk-through of the apartment, and after being satisfied that the residence was secure, they returned to their normal duties.
 {¶ 3} Thereafter, approximately four hours later, Meister and Woten, who had began patrolling with Officer Jason Garlock, were dispatched to the same apartment complex on a 911 call from apartment sixty-seven. The caller informed police that a disturbance was ensuing in the apartment directly below her. When the officers arrived, they realized that the apartment under number sixty-seven was apartment sixty-three, the same apartment they had visited earlier in the evening.
 {¶ 4} Officer Meister walked around the apartment while the other officers stood beside the door of the residence. While standing near a window, Meister could hear loud voices and what he thought sounded like someone hitting another. Thus, the officers knocked on the apartment door and announced their presence. After a short delay, a crying woman carrying a baby answered the door. The officers could hear other children crying and screaming within the residence. Meister, with Woten and Garlock following, proceeded down the hallway of the apartment to a darkened bedroom, where they found Reynolds standing with two other men. Behind the men, the officers could hear another crying child.
 {¶ 5} Officers Meister and Woten were standing just outside the doorway of the bedroom, and both could see all three men. Meister ordered the three men to put their hands behind their heads, which was followed by Woten's demand that one of the occupants, Dante Bowens, slowly exit the room. As Bowens passed Woten and proceeded towards Garlock, who was standing in the hallway just out of view from the bedroom, Reynolds put his hands down, leaned to his right, apparently grabbing a gun, and fired a single shot in Woten and Meister's direction.
 {¶ 6} Meister, who thought he may have been shot, turned his body and sought cover in an adjacent bedroom. Afraid that the shooter may follow him, he dove through the bedroom window and fled from the residence. Simultaneously, Woten, who was also afraid that she had been shot, turned and went down the hallway towards the door of the apartment. While doing so, she told the woman in the house to exit with the children. At the same time, Garlock had made his way to the doorway and was holding the door open for Woten and the others fleeing the residence. Once outside, the officers called for back-up, and, after approximately thirty minutes, Reynolds exited the residence and was arrested.
 {¶ 7} Reynolds was charged with felonious assault of a peace officer with a firearm specification. After a jury trial, he was found guilty and sentenced to a maximum term of ten years for the assault and a mandatory consecutive term of three years for the firearm specification. From his conviction and sentence, Reynolds appeals, asserting four assignments of error for our review. For purposes of brevity and clarity, we elect to combine our discussion of his first and second assignments.
Assignment of Error I
 The trial court's verdict that Defendant was guilty of felonious assault upon a peace officer with a firearm specification is against the manifest weight of the evidence.
 Assignment of Error II
 Appellee's evidence was legally insufficient to support the verdict of the trial court.
 {¶ 8} Reynolds maintains that the verdict of guilt for felonious assault of a peace officer with a firearm specification was based upon insufficient evidence and was against the manifest weight of the evidence. Since sufficiency and weight are two distinct legal concepts,[1] we must address each argument separately.
 {¶ 9} We will first discuss Reynolds' assertion that the evidence was insufficient to find him guilty of felonious assault beyond a reasonable doubt. When reviewing a claim of insufficient evidence:
 [a]n appellate court * * * [must] examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2]
 {¶ 10} The elements of felonious assault include that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance."[3]
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."[4] Felonious assault is a first degree felony if the victim of the crime is a peace officer, which is defined as "a sheriff; deputy sheriff; marshal; deputy marshal; [or] member[s] of the organized police department of any municipal corporation[.]"[5]
Additionally, a three-year mandatory prison term will be imposed upon violation of R.C. 2903.11(A)(2) if the offender "had a firearm on or about * * * [his] person or under * * * [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that * * * [he] possessed the firearm, or used it to facilitate the offense."[6]
 {¶ 11} The evidence herein indicates that Reynolds first brandished a gun on the night in question when he and his girlfriend were arguing. Bowens, a friend of Reynolds who was present throughout the evening, testified that Reynolds had the gun out on the kitchen table as the men were playing cards. Later, as Reynolds became agitated with his girlfriend, he took the gun into the bedroom while confronting her. Bowens further testified that, prior to police arrival, Reynolds used the gun to put holes in the walls of the apartment, fired the gun in hallway, and threatened those that were present.
 {¶ 12} When the police arrived, both Officer Woten and Meister testified that they were standing in the doorway of a bedroom that Reynolds, Bowens, and another man were occupying. The officers indicated that Reynolds was standing within a few feet of them. Both officers stated that after Bowens was ordered out of the room and had passed them, Reynolds said "fuck this," dropped his hands from his head, leaned to the right, grabbed a gun, and fired a single shot in their direction. Both officers testified that they were unsure whether they had been shot and that the flash from the gun was pointing directly at them.
 {¶ 13} The identification officer for the Lima Police Department, Michael Hammond, testified that bullet holes in the apartment were consistent with a gun being fired from where Reynolds was standing and that the position of the gun, at the time of the incident, was as described by the officers. Testimony further indicates that no other bullet holes in the apartment would be consistent with a gunshot from Reynolds' position. Additionally, a spent casing from Reynolds' gun was found in the room he was occupying at the time. The gun was also test fired after the incident and was fully operable.
 {¶ 14} Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Reynolds knowingly caused or attempted to cause physical harm to the officers by means of a deadly weapon. For these reasons, we overrule Reynolds' second assignment of error.
 {¶ 15} We now turn to discuss Reynolds' contention that the jury verdict was against the manifest weight of the evidence. The standard to apply when reviewing such a claim has been set forth as follows:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[7]
 {¶ 16} Furthermore, an appellate court should grant a new trial only in an exceptional case "where the evidence weighs heavily against the conviction."[8] This is not such a case. A complete review of the record here does not lead this Court to conclude that the jury clearly lost its way in rendering a guilty verdict.
 {¶ 17} Therefore, we overrule Reynolds' first assignment of error.
Assignment of Error III
 Whether Appellant was denied effective assistance of counsel under Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution.
 {¶ 18} In his third assignment of error, Reynolds contends that his counsel's performance was ineffective, claiming that various errors by counsel, either singularly or cumulatively, provided a reasonable probability that, but for counsel's errors, the outcome of trial would have been different.
 {¶ 19} Attorneys licensed in Ohio "are presumed to provide competent representation."[9] A claim for ineffective assistance of counsel requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.[10] To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different:[11] "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.[12]
 {¶ 20} Reynolds first argues that his counsel was ineffective for failing to use peremptory strikes at the close of voir dire regarding several jurors. Specifically, he claims that because two of the jurors were related to law enforcement officers, that one juror turned her son into the authorities for theft, that another juror knew the judge, and that two of the jurors knew each other, the available peremptory strikes should have been utilized.
 {¶ 21} Initially we note that how an attorney chooses to conduct voir dire, including the use of peremptory strikes, constitutes trial strategy; accordingly, a reviewing court should not "second-guess" such decisions, and courts should presume that counsel's conduct falls within a wide range of reasonable professional assistance.[13] Additionally, each juror herein was asked whether they would be able to be impartial and base their decision on the evidence provided, to which none responded in the negative. As such, the record does not support a conclusion that counsel's actions during voir dire or failure to exercise peremptory strikes constituted ineffective assistance of counsel.[14]
 {¶ 22} Reynolds further argues that his counsel was deficient for failing to file a motion to suppress based on whether exigent circumstances justified the entrance of police into his apartment. A warrantless entry into a home is considered presumptively unreasonable absent, among other things, exigent circumstances.[15] An "emergency situation," however, has been recognized as an exigent circumstance justifying a warrantless search.[16] "The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal, absent an exigency or emergency situation."[17]
 {¶ 23} Herein, the police officers had been dispatched to Reynolds' apartment based upon a 911 call. Once they arrived, the officers heard yelling and someone hitting another. Additionally, when Reynolds' girlfriend opened the door, the officers saw that she was crying and heard children screaming and crying within. Based on these facts, the police had the requisite exigent circumstances justifying a warrantless entrance into the apartment. Accordingly, Reynolds' counsel was not deficient by failing to file such motion to suppress.
 {¶ 24} Reynolds additionally claims that his counsel failed impeach Officer Woten's trial testimony with inconsistent testimony she provided before the grand jury, failed to present evidence through direct or cross examination supporting potential defenses, including that the incident was an accident, and failed to request instructions on lesser included offenses. However, appellate courts will not second-guess counsel's strategy in direct and cross examination of witnesses.[18]
Also, the Ohio Supreme Court has held that "[f]ailure to request instructions on lesser included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."[19]
 {¶ 25} Based upon the foregoing and after a review of the record, we find that Reynolds' counsel acted within the wide range of acceptable professional assistance. Moreover, Reynolds has failed to show that any of the alleged errors, either singularly or cumulatively, are sufficient to undermine confidence in the result of the trial. Consequently, we find Reynolds' third assignment of error to be without merit, and it is hereby overruled.
Assignment of Error IV
 The trial court erred in sentencing the appellant to the maximum time of incarceration.
 {¶ 26} The structure of Ohio felony sentencing law provides that the trial court's statutory findings determine the sentence imposed.[20]
A trial court must be in strict compliance with the relevant sentencing statutes by making all findings on the record at sentencing.[21] A sentencing court need not, however, recite the exact words of the statute so long as the record clearly indicates that the court considered applicable sentencing guidelines and set forth appropriate findings and reasons in support of its determination.[22]
 {¶ 27} R.C. 2953.08(G)(2) authorizes appellate courts to increase, reduce, or otherwise modify or vacate a sentence and remand the matter to the trial court for re-sentencing if the court finds by clear and convincing evidence:
 (a)That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13; division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or]
 (b)That the sentence is otherwise contrary to law.
 {¶ 28} Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.[23] An appellate court should not, however, simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims."[24]
 {¶ 29} A felony of the first degree warrants a definite prison term of three, four, five, six, seven, eight, nine, or ten years,[25]
and it is presumed that a prison term is necessary to comply with the purposes and principles of sentencing under R.C. 2929.11.[26] According to R.C. 2929.11, the overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender. When sentencing an offender, the trial court is granted broad discretion in determining the most effective way to uphold these objectives.[27]
R.C. 2929.12 enumerates a nonexclusive list of seriousness and recidivism factors that sentencing courts must consider. Courts are also permitted to contemplate any other circumstances or factors that are relevant to achieving the purposes and principles of sentencing.[28]
 {¶ 30} For his final assignment of error, Reynolds maintains that the trial court failed to properly justify sentencing him to the maximum term for felonious assault. Specifically, Reynolds claims that the trial judge did not indicate on the record that Reynolds committed the worst form of the offense and did not give reasons why Reynolds would pose the greatest likelihood of committing future crimes. Reynolds further argues that the trial court failed to properly evaluate the factors contained in R.C. 2929.12 relating to the likelihood of recidivism.
 {¶ 31} In order to sentence Reynolds to the maximum prison term, the trial court was required to find that Reynolds either committed one of the worst forms of the crime or that he poses the greatest likelihood of committing future crimes.[29] The trial court expressly noted on the record at sentencing that "the longest term is imposed since the defendant poses the greatest likelihood of committing future crimes." The court further justified this finding on the record by noting that at the time of the incident herein, Reynolds was on community control sanctions for attempted failure to comply with an order or signal of a police officer. Additionally, the court related that the prior action involved a situation where Reynolds became angry with his girlfriend and sought out to locate her with a gun, which the court compared to the incident herein.
 {¶ 32} In discussing the recidivism factors in R.C. 2929.12, the court stated that at the time of the offense, Reynolds was under community control sanctions,[30] he has a previous record for failing to comply with an order of a police officer,[31] he has not been rehabilitated to a satisfactory degree,[32] and he shows no remorse for his actions.[33] While Reynolds maintains that the trial court failed to consider the less likely to recidivate factors in R.C. 2929.12(E), the Revised Code does not "specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable * * * recidivism factors."[34] Consequently, the sentencing court can satisfy its duty under R.C. 2929.12 with nothing more than a recitation of the factors it considered to be applicable,[35] as the court did herein. Moreover, sentencing courts are vested with significant discretion in determining the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances.[36]
 {¶ 33} Having reviewed the entirety of the record, we find that the trial court properly complied with the sentencing guidelines set forth in R.C. Chapter 2929 in imposing the maximum sentence. The court's analysis illustrates that it fulfilled its obligation to consider appropriate sentencing guidelines, the record supports the court's determination, and the sentence is not otherwise contrary to law. For these reasons, Reynolds' fourth assignment of error is overruled.
 {¶ 34} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
 BRYANT, P.J., and CUPP, J., concur.
[1] State v. Thompkins (1977), 78 Ohio St.3d 380, paragraph two of the syllabus.
[2] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, reversed on other grounds.
[3] R.C. 2903.11(A)(2).
[4] R.C. 2901.22(B).
[5] R.C. 2901.11(D) and 2935.01(B).
[6] R.C. 2941.145(A).
[7] State v. Martin (1983), 20 Ohio App.3d 172, 175; Thompkins,78 Ohio St.3d at 387.
[8] Id.
[9] State v. Robinson (May 31, 2002), Union App. No. 14-02-01, at ¶ 26, quoting State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07.
[10] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
[11] Id. at paragraph three of the syllabus.
[12] State v. Waddy (1992), 63 Ohio St.3d 424, 433, citing UnitedStates v. Bagley (1985), 473 U.S. 667, 682.
[13] Robinson, supra, at ¶ 28, citing State v. Mason (1998),82 Ohio St.3d 144, 157; State v. Fawcett (Mar. 14, 2001), Seneca App. No. 13-99-14, citing State v. Goodwin (1999), 84 Ohio St.3d 331,341.
[14] See Fawcett, supra.
[15] State v. Canty (Aug. 22, 1990), Lorain App. No. 90CA004775, citingPayton v. New York (1980), 445 U.S. 573, 586.
[16] Id., citing Mincey v. Arizona (1978), 437 U.S. 385, 392-93.
[17] Id., citing Mincey, 437 U.S. at 392-93.
[18] State v. Manley (Oct. 18, 2002), Allen App. No. 1-01-159,2002-Ohio-5582, at ¶ 22, citing State v. Gray (Mar. 28, 2000), Franklin App. Nos. 99AP-666 and 99AP-667.
[19] State v. Griffie (1996), 74 Ohio St.3d 332, 333, citing State v.Clayton (1980), 62 Ohio St.2d 45, certiorari denied (1980),449 U.S. 879.
[20] State v. Martin (1999), 136 Ohio App.3d 355, 362.
[21] Id.; State v. Williams (2000), 136 Ohio App.3d 570, 572.
[22] State v. Mitchell (Mar. 28, 2002), Crawford App. No. 3-01-20,2002-Ohio-1400, at ¶ 9 (citations omitted).
[23] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469.
[24] State v. Jones (2001), 93 Ohio St.3d 391, 400,2001-Ohio-1341.
[25] R.C. 2929.14(A)(1).
[26] R.C. 2929.13(D).
[27] R.C. 2929.12(A); State v. Fyffe (Oct. 5, 2001), Auglaize App. No. 2-01-16; State v. Avery (1998), 126 Ohio App.3d 36, 50-51.
[28] See R.C. 2929.12(A), (B), (C), (D), and (E).
[29] R.C. 2929.14(C) (emphasis added).
[30] R.C. 2929.12(D)(1).
[31] R.C. 2929.12(D)(2).
[32] R.C. 2929.12(D)(3).
[33] R.C. 2929.12(D)(5).
[34] State v. McNeal (June 18, 2002), Allen App. No. 1-01-158,2002-Ohio-2981, at ¶ 60, citing State v. Arnett (2000),88 Ohio St.3d 208, 215; State v. Mills (1992), 62 Ohio St.3d 357,376.
[35] McNeal, supra, at ¶ 60, citing Arnett, 88 Ohio St.3d 215.
[36] Arnett, 88 Ohio St.3d at 215, citing State v. Fox (1994),69 Ohio St.3d 183, 193; Mills, 62 Ohio St.3d at 376. See, also, Avery,126 Ohio App.3d at 50; State v. Head (Apr. 3, 2003), Auglaize App. No. 2-02-15, 2003-Ohio-1704, ¶ 12.