[Cite as *Mayfield Hts. v. Barry*, 2011-Ohio-2665.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95771

---

## CITY OF MAYFIELD HEIGHTS

### PLAINTIFF-APPELLEE

vs.

## DENVER BARRY

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Lyndhurst Municipal Court
Case No. 09 CRB 00397

**BEFORE:**   Cooney, J., and Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   June 2, 2011

**ATTORNEY FOR APPELLANT**

Nicholas J. Schepis
6181 Mayfield Road
Suite 302
Mayfield Hts., Ohio 44124

**ATTORNEYS FOR APPELLEE**

Dominic J. Vitantonio
George J. Argie
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio 44143

COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Denver Barry ("Barry"), appeals the jury verdict finding him guilty of violating two sections of the Mayfield Heights Codified Ordinances ("MHCO"). We find no merit to the appeal and affirm.

{¶ 2} Barry, through his company April Management, Ltd., owns a two-acre parcel of land located at 1592 Lander Road ("the property") in the

city of Mayfield Heights ("the City"). The northern edge of the property is bounded by ten parcels upon which there are single-family homes located on Mayland Avenue. Shortly after April Management purchased the property, Barry began making improvements to the single-family home that existed there. As the project progressed, neighbors from the adjacent properties complained to the City that Barry's property was littered with a collection of unsightly debris. They also complained that Barry used a backhoe to move dirt on the property, changed the grade of the soil, and caused water to accumulate into large pools that encroached into their backyards.

{¶ 3} On April 29, 2009, the City building inspector, Tim Tresar ("Tresar"), issued notices to cure two violations of the MHCO. The notices provided Barry approximately two weeks to correct the problems. On May 14, 2009, the City issued new notices giving Barry until June 10, 2009 to cure the violations. Meanwhile, on April 30, 2009, the City building director, Thomas Jamieson ("Jamieson"), criminally charged Barry with violating MHCO 1389.04(A)(6), the "debris" charge, and MHCO 559.04(c), the "watercourse" charge.

{¶ 4} Barry initially pled not guilty and filed demands for discovery including a bill of particulars and a motion to compel responses to the bill of particulars. On the day scheduled for trial, the parties entered into a

three-page handwritten plea agreement, which provided that Barry would plead no contest, pay court costs, and would hire an engineer to design, plan, and install a functioning storm water drainage system on his property as well as the affected adjoining landowners' properties. The engineer's plan was subject to approval by the City Building Department and the City engineer. In exchange, the City agreed to dismiss the charges against Barry with prejudice once the storm drainage system was approved and installed on the affected properties and his property was in compliance with the MHCO.

{¶ 5} Barry's engineer, Stephen J. Hovancsek ("Hovancsek"), submitted plans for the storm sewer to the City. However, the City engineer, David G. McCallops, P.E., URS Corporation, refused to approve Hovancsek's plan because it lacked necessary topographic information, did not provide sufficient catch basins, the drawing did not show the existing drainage system, and various other reasons. As a result, Barry's no contest plea was vacated and the case proceeded to a jury trial at which Barry was found guilty on both counts. On the first count, he was sentenced to a $1,000 fine, $750 suspended, 180 days in jail, suspended, with 6 months active probation or until compliance. On the second count, he was sentenced to a $500 fine, $250 suspended, and costs suspended pending compliance. A stay of the

sentence was granted for 30 days, pending appeal. Barry now appeals, raising 15 assignments of error.

## Culpable Mental State

{¶ 6} In the first assignment of error, Barry argues the complaints were defective because they failed to include a culpable mental state. As such, he claims, the applicable degree of culpability is recklessness, which is therefore an element of the crimes. Barry further argues that because the jury was not instructed on the recklessness element of these crimes, it did not find proof beyond a reasonable doubt on all of the elements of the offenses. The City argues that both sections of the MHCO provide strict liability offenses.

{¶ 7} Barry never objected to the complaints in this case. By failing to timely object to a defect in the complaints, Barry waived all but plain error. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, paragraph three of the syllabus. It is also well settled that if the party fails to object to the jury instructions before the jury retires to consider its verdict, the party waives the alleged error on appeal. *State v. Slagle* (1992), 65 Ohio St.3d 597, 605, 605 N.E.2d 916. Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. Crim.R. 52(B). Under this standard, reversal is warranted only when the outcome of the trial would

have been different without the error. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 8} Barry asserts that because the jury was not instructed on a recklessness element of the crimes, it did not find proof beyond a reasonable doubt on all of the elements of the offenses. However, the evidence of the violations is overwhelming. Barry's neighbors testified that the violations persisted over a long period of time despite their many complaints. Employees of the Mayfield Heights Building Department spoke with Barry about the violations several times before formally charging him with the violations. Yet Barry failed to take any action to even attempt to correct the problem. Under these circumstances, it is doubtful the jury would have acquitted Barry even if the City was required to prove recklessness as an element of these offenses.

{¶ 9} Therefore, the first assignment of error is overruled.

### The "Watercourse Charge"

{¶ 10} In his second assignment of error, Barry argues there was insufficient evidence to support the finding that he violated MHCO 559.04(c), the "watercourse charge." Barry contends the evidence was insufficient because the water the jury found to have been diverted was not a "watercourse." We disagree.

{¶ 11} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the prosecution has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the City's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 12} MHCO 559.04(c) provides:

"No person shall unlawfully obstruct or impede the passage of a navigable river, harbor, or collection of water, or corrupt or render unwholesome or impure a watercourse, stream of water, or unlawfully divert such watercourse from its natural course or state to the injury or prejudice of others."

{¶ 13} The operative prohibitory language of the ordinance is "* * * obstruct or impede the passage of a * * * collection of water * * *." The City never argued, nor was there any evidence, that Barry diverted a watercourse. Several neighbors testified that Barry's activities caused water to pool on their properties. One witness described it as "quite a body of water." The large collection of water at issue was also presented to the jury in numerous

photos taken at different times of the year.[1]  In one picture, there is such an abundance of water that it looks as though there is a river or lake running along the back yards of the houses located on the northern edge of Barry's property.  Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Barry unlawfully obstructed a "collection of water" to the prejudice of the adjacent landowners.  Therefore, there was sufficient evidence showing that the essential elements of the "watercourse" charge were proven beyond a reasonable doubt.

{¶ 14} Accordingly, the second assignment of error is overruled.

### The "Debris" Charge

{¶ 15} In his third assignment of error, Barry argues there was insufficient evidence to support the finding that he violated MHCO 1389.04, the "debris" charge.  Barry claims that because the City issued a notice of the violations on April 30, 2009, which required the violations be cured by May 15, 2009, the City did not have authority to institute criminal proceedings until a reinspection on or after May 15, 2009 revealed continuing violations.

{¶ 16} In support of this argument, Barry relies on provisions governing "notices of violations" and "noncompliance with notices" contained in Chapter

---

[1] Barry's counsel admitted at oral argument that it was a collection of water.

1389 of the MHCO. MHCO 1383.04 provides that whenever the Director of Buildings or other City department finds a premises to be in violation of any of the provisions of the Housing Code, "the Director of Buildings shall give or cause to be given or mailed to the owner or operator of such * * * premises a written notice stating the violation." The provision goes on to state that "[s]uch notice shall order the owner or operator, within a stated reasonable time, to repair, improve or demolish the structure or premises concerned."

{¶ 17} Although MHCO 1383.04 explicitly requires notice be given to the property owner, this notice is not a prerequisite to the filing of a criminal charge. MHCO 1393.05, which governs noncompliance, authorizes the Director of Buildings to issue notice to the property owner "ordering the * * * premises or part thereof to be vacated." MHCO 1393.05 also authorizes the Director of Buildings to "advise the Director of Law of the circumstances and request the Director to institute an appropriate action at law to compel compliance, or both." Although MHCO 1383.04 and 1383.05 allow the City to enforce compliance, these two ordinances do not contain criminal sanctions or set forth a preliminary requirement before filing such charges.

{¶ 18} Barry was charged with violating MHCO 1389.04 and 559.04. The penalty for violation of the debris ordinance is set forth in MHCO 1389.99, which provides that it is a first degree misdemeanor. MHCO

1389.99 further provides that the imposition of a criminal penalty "shall not preclude the Director of Law from instituting an appropriate action * * * in a court of proper jurisdiction to * * * correct or abate a violation; or to require compliance with the provisions of this chapter * * *." MHCO 1389.99(b). Thus, MHCO 1389.99(b) indicates that action to compel compliance under Chapter 1383 is a separate method of enforcement in addition to criminal proceedings. Because the notice provisions in Chapter 1383 do not apply to criminal action taken under Chapter 1389, the fact that the City did not wait to see if Barry would comply with the notice did not prevent the City from instituting criminal proceedings for the violations. The City had agreed to dismiss the charges once a storm water drainage system was approved and installed.

{¶ 19} Accordingly, the third assignment of error is overruled.

## Unfair Surprise

{¶ 20} In his fourth assignment of error, Barry argues there was insufficient evidence to support the debris charge conviction. Barry contends that the City's presentation of evidence concerning conditions and events occurring months and years before the dates of the alleged building code violations constituted unfair surprise and deprived him of a fair trial.

{¶ 21} First, we note that Barry never objected to the City's evidence any time during the trial. His claim of surprise is being raised for the first time on appeal and, therefore, was not preserved. Nevertheless, we find Barry's claim of unfair surprise is not supported by the record.

{¶ 22} The record includes a copy of the City's responses to Barry's discovery requests. The cover letter, dated September 14, 2009, states:

> "As you may know, this office has a practice of 'open-file discovery' in connection with the prosecution of all criminal, quasi-criminal and traffic cases in the Lyndhurst Municipal Court. It is our practice to make the entire police/court file open to the defense at any scheduled pretrial(s)."

{¶ 23} The letter further explains that during at least two pretrials, Building Inspector Tim Tesar was present with his entire file regarding Barry's alleged offenses. The letter further states:

> "The file was available for your review/inspection/scrutiny, at your leisure, and I made it clear that Tesar was available to answer questions regarding the subject matter of the charges. I placed no restrictions on your access to any of the information. As I stated above, you are each welcome to obtain a copy of anything in the file, at your request."

{¶ 24} Tesar's file included several photos of the properties taken at different times of the year. Barry also knew that his neighbors were going to testify at trial and that they would likely discuss the conditions reflected in Tesar's photos as well as their experiences with Barry. Therefore, we find Barry's claim that this evidence came as a surprise to be meritless.

**{¶ 25}** The fourth assignment of error is overruled.

<u>Expert Testimony and Manifest Weight</u>

**{¶ 26}** In his fifth assignment of error, Barry argues the jury verdict on the watercourse charge is against the manifest weight of the evidence. Barry argues the testimony of two expert witnesses is automatically more credible than lay witness testimony because they are professionals testifying to "physical facts."

**{¶ 27}** With respect to the watercourse charge, the City alleged that before Barry started work on his property, water occasionally collected on the property after a heavy rain or melting snow. The water was distributed primarily on Barry's property and to a lesser extent to an adjacent property owned by Ronald Brough. The City charged Barry with altering the grade and topography of his property so as to obstruct or impede the natural settling or flow of this water causing it to collect into a larger pool of water.

**{¶ 28}** In his case-in-chief, Barry presented two experts who were both professional surveyors. Neither expert had seen the property before Barry had changed it nor had they actually observed Barry working on his property. One expert, John Alban ("Alban"), testified that he compared the topography of the land with a topographical map that was made in 1993. He explained that the map was generated by photographs that were taken from an airplane

by an aerial surveying company in 1993. On cross-examination, he admitted that the elevations depicted on the map would be accurate to within plus or minus one foot. He also admitted that he had visited the property once in August when the area was dry and that he had never even seen the property with water present.

{¶ 29} The other expert, Steven Hovencsek, testified that there was a swale[2] in the rear yards of the Mayland Avenue properties that was supposed to carry water in a westerly direction. He asserted that the swale was not working because of "large trees in the back of the Brough property." However, on cross-examination, he admitted that he had not viewed the property until after September 2009, many months after Barry's work had been completed. He admitted that he had no personal knowledge of any type of construction work that might have been performed on the property nor did he have any knowledge of the conditions on the property during heavy rainfall.

{¶ 30} Several affected neighbors testified for the City. They described what the land was like before Barry started his activities and how it has changed since Barry moved the soil on his property. They also testified that

---

[2] Webster's New World Dictionary, Third College Edition, defines "swale" as "a hollow, depression, or low area of land" and "such a place in a wet, marshy area."

they personally observed Barry moving the soil. There was no evidence of any other changes on other properties that obstructed the flow of the water. The jury apparently believed the neighbors' testimony over that of Barry's experts. The neighbors' testimony is competent, credible, and based on personal knowledge.

{¶ 31} Accordingly, the fifth assignment of error is overruled.

Jury Instructions

{¶ 32} In his sixth assignment of error, Barry argues the trial court improperly instructed the jury on the watercourse charge. Barry contends the trial court should have defined "watercourse" according to the definition provided in *Sporting Club v. Miller* (1928), 118 Ohio St. 360, 161 N.E. 12, paragraph three of the syllabus. Barry also claims the court should have defined the words "navigable," "obstruct," "impeded," and "divert."

{¶ 33} However, because Barry never objected to the jury instructions at the time of trial, he has waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus. In order to find plain error

under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

{¶ 34} The City never argued nor did it present evidence that Barry diverted or otherwise corrupted a "watercourse." Rather Barry was charged and convicted of diverting a "collection of water." Thus, the definition of a "watercourse" was irrelevant, and the trial court did not err in failing to define it.

{¶ 35} The words "navigable," "obstruct," "impeded," and "divert" are common everyday words. Words of ordinary or common usage need not be defined for the jury because they are typically within the vocabulary of a person of ordinary intelligence. *State v. Haskell*, Seneca App. No. 13-03-45, 2004-Ohio-3345, ¶17; *Bently v. Collins,* Cuyahoga App. No. 83028, 2004-Ohio-369, ¶12, citing *State v. Riggins* (1986), 35 Ohio App.3d 1, 8, 519 N.E.2d 397. For this reason, the court often instructs the jury that they may apply the plain and ordinary meaning to words of common usage.

{¶ 36} In charging the jury, the trial court read MHCO 559.04(c) to the jury. As previously explained, the ordinance prohibits one from unlawfully obstructing or impeding "a navigable river, harbor, or collection of water." The testimony and photos at trial showed that Barry's actions changed the topography and created "quite a body of water." The testimony further established that although water had collected in that area before Barry

changed the topography, the water did not collect in such a way as to create such a large "body of water." Moreover, Barry's neighbors testified that the water was not a problem on their properties until after Barry changed the topography. We find nothing in the record indicating that if the court had defined the words in the ordinance, the jury would not have convicted Barry.

**{¶ 37}** Accordingly, the sixth assignment of error is overruled.

## Jury Questions

**{¶ 38}** In the seventh assignment of error, Barry argues he was denied a fair trial because the trial court failed to read the jury questions into the record. Barry contends this omission prejudiced him because "in the absence of a complete record, this court must presume the regularity of the trial court's proceedings." An incomplete record, by itself, does not establish prejudice. Barry fails to show how the incomplete record affected the outcome of the proceedings. We therefore overrule the seventh assignment of error.

## Plea Agreement

**{¶ 39}** In his eighth assignment of error, Barry argues he was denied due process because the City breached the plea agreement by failing to dismiss the debris charge. He also claims the trial court erred by failing to

require specific performance to force the City to dismiss the charges against him.

**{¶ 40}** "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶50, citing *United States v. Wells* (C.A.6, 2000), 211 F.3d 988, 995. If one side breaches the agreement, the other side is entitled to either rescission or specific performance of the plea agreement. *State v. Walker*, Lucas App. No. L-05-1207, 2006-Ohio-2929, ¶13, citing *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427.

**{¶ 41}** The parties' handwritten plea agreement provided that Barry would install a functioning stormwater drainage system on his property and the adjoining landowners' properties. The storm drainage system was subject to approval by the City Building Department and the City's engineer. The agreement further provided:

> "Once the storm water drainage system has been approved by Stephen J. Hovancsek and the City and installed on the subject properties, these parties shall return to court. At that time, both pending charges will be dismissed with prejudice for the period of time prior to and up to the date of dismissal."

**{¶ 42}** Barry never installed a functioning stormwater drainage system as required by the agreement. Although Hovencsek prepared a plan for a

storm drainage system, the City engineer refused to approve Hovancsek's plan because it lacked the necessary topographic information, did not provide sufficient catch basins, the drawing did not show the existing drainage system, and various other reasons. The plea agreement was not completed, and a jury trial was therefore scheduled. The docket reflects that the no contest plea was vacated and Barry's not guilty plea reinstated.

{¶ 43} Furthermore, the fact that Barry removed the debris by May 14, 2009 does not relieve him of criminal liability for having violated MHCO 1389.04 in the months leading up to April 30, 2009.

{¶ 44} Accordingly, the eighth assignment of error is overruled.

Bill of Particulars

{¶ 45} In the ninth assignment of error, Barry argues he was denied due process and a fair trial because he was denied a bill of particulars. Barry claims the vagueness of the "bill of particulars" deprived Barry of notice sufficient for preparing a defense on the basis of the statute of limitations. However, because Barry never objected to the sufficiency of the bill particulars, we review for plain error. Crim.R. 52(B).

{¶ 46} R.C. 2941.07 provides that upon timely written request, "the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of

the defendant alleged to constitute the offense." See, also, Crim.R. 7(E). "A bill of particulars has a limited purpose — to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. * * * A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 478 N.E.2d 781. If the defendant seeks reversal of his conviction because the bill of particulars was insufficient, the defendant must show that the lack of knowledge of certain facts that should have been included in the bill of particulars prejudiced his ability to fairly defend himself. *State v. Chinn* (1999), 85 Ohio St.3d 548, 569, 709 N.E.2d 1166.

{¶ 47} Although Barry claims the vagueness of the bill of particulars impaired his ability to defend himself, he fails to show how knowledge of certain facts omitted from the bill of particulars would have changed his defense. The record indicates that Barry's counsel was well prepared for trial and even offered two expert witnesses to defend against the watercourse charge. Finding that Barry was not prejudiced by an insufficient bill of particulars, we overrule the ninth assignment of error.

## Prosecutorial Misconduct

{¶ 48} In the tenth assignment of error, Barry argues he was deprived of a fair trial because the prosecutor improperly mislead the jury as to the evidence and applicable law. Barry claims that in closing argument, the prosecutor made "overly broad and incorrect statements of the law," or invitations "to go on a fishing expedition."

{¶ 49} During closing argument, the City argued that with respect to the watercourse charge, the relevant inquiry was whether Barry obstructed or impeded a collection of water. Throughout the trial, the City argued that Barry violated this section of the ordinance by obstructing or impeding the passage of a collection of water. Barry asserts that this statement constitutes "an overly broad and incorrect statement of the law," because the word "navigable" applies to "river," to "harbor," and to "collection of water." Thus, Barry contends the proper statement would be "obstructed or impeded a navigable collection of water."

{¶ 50} However, because Barry's trial counsel never objected to the prosecutor's closing argument, we review the allegedly improper statements for plain error. Crim.R. 52(B). The trial court provided the jury with a copy of MHCO 559.04(c), which provides, in pertinent part that "[n]o person shall unlawfully obstruct or impede the passage of a navigable river, harbor, or

collection of water." Thus, the jury had the entire ordinance and heard arguments from both sides. Under these circumstances, it cannot be said that, absent the allegedly improper closing remarks, the outcome would have been different.

**{¶ 51}** Therefore, the tenth assignment of error is overruled.

<u>"Other Acts" Evidence</u>

**{¶ 52}** In the eleventh assignment of error, Barry argues he was deprived of a fair trial because the court allowed the prosecution to introduce "other acts" evidence in violation of Evid.R. 404(B). Barry contends the photos introduced as evidence were "old" and not taken on the day the citations were issued.

**{¶ 53}** Pursuant to Evid.R. 404(B), evidence of other acts that are wholly independent of the crime charged is generally inadmissible. *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855. Evid.R. 404(B) provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶ 54}** Accordingly, evidence of other crimes committed by the accused either before or after the crime charged is inadmissible to show a propensity

to commit crimes, but may be relevant and admissible to show motive or intent, the absence of mistake or accident, or a scheme, plan, or system in committing the act in question. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. Evidence of an accused's other acts is thus admissible only when it "tends to show" one of the material elements in the charged offense and only when it is relevant to the proof of the accused's guilt for such offense. *State v. Curry* (1975), 43 Ohio St.2d 66, 68-69, 300 N.E.2d 720.

**{¶ 55}** The City offered photos of the flooded property strewn with debris for the sole purpose of establishing the material elements of the charged offenses. Photos of the large body of water "tend to show" that Barry unlawfully obstructed or impeded the flow of water in violation of MHCO 559.04. The photos of debris "tend to show" that Barry littered his property with plastic materials and other materials "in such a manner as to be patently unsightly" in violation of MHCO 1389.04. Because the pictures do not constitute evidence of any other crimes or acts, Evid.R. 404(B) is inapplicable.

**{¶ 56}** Accordingly, the eleventh assignment of error is overruled.

## Void for Vagueness

{¶ 57} In the twelfth assignment of error, Barry claims he was denied due process of law because the ordinances he was charged with violating are void for vagueness. He contends they did not provide fair notice as to what conduct was prohibited because the notices the City issued to him did not specify the conditions alleged to be violation of the ordinances.

{¶ 58} First, we note that Barry never raised the issue as to whether the ordinances were constitutionally defective and void due to vagueness in the trial court. Where a defendant fails to raise a constitutional argument to the trial court, the appellate court need not review the issue. *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. However, we may review the issue if we so choose to exercise our discretion. *In re M.D.* (1988), 38 Ohio St.3d 148, 151, 527 N.E.2d 792. See, also, Crim.R. 52(B) (if substantial rights affected, court may decide to hear). Because Barry argues in a later assignment of error that his trial counsel's failure to object to numerous errors deprived him of a fair trial, we review this issue.

{¶ 59} In determining whether a statute or ordinance is void for vagueness, the court must consider whether the enactment "(1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement." *Norwood v. Horney*, 110

Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶84. A statute is not void for vagueness simply because it could have been worded more precisely or with additional certainty. *Rose v. Locke* (1975), 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185. The "critical question in all cases is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law." *Norwood* at ¶86.

{¶ 60} To invalidate legislation, the challenger must establish its unconstitutionality beyond a reasonable doubt. *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38-39, 616 N.E.2d 163. In other words, the challenger must "'prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged.'" *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552. (Citation omitted.)

{¶ 61} As previously stated, MHCO 1389.04 provides, in pertinent part:

"No owner or occupant of any premises shall maintain or permit to be maintained, at or on the exterior property * * * any condition which deteriorates or debases the appearance of the neighborhood, reduces property values in the neighborhood, * * * including but not limited * * * to:

"Plastic materials, paints, miscellaneous covering and/or any other materials * * * placed on the premises in such a manner as to be patently unsightly, grotesque or offensive of assessments."

{¶ 62} The first paragraph prohibits property owners from keeping any condition on the property that damages the appearance of the neighborhood and reduces property values in the neighborhood. Simply put, the ordinance prohibits a property owner from allowing his property to look so bad that it reduces the property values in the neighborhood. The second paragraph more specifically describes a prohibited condition: property is littered with plastic materials or other materials that make the property "unsightly." Although the term "unsightly" includes some degree of subjectivity, the word itself is commonly understood to mean "ugly." The listing of "plastic materials" and "other materials" suggests that the prohibited condition involves materials being scattered or piled up on the property. Although the language is not precise, we find the plain and ordinary meaning of the language in this ordinance is sufficient to put a person of ordinary intelligence on notice of its proscriptions.

{¶ 63} MHCO 559.04(c) provides:

"No person shall unlawfully obstruct or impede the passage of a navigable river, harbor, or collection of water, or corrupt or render unwholesome or impure a watercourse, stream of water, or unlawfully

divert such watercourse from its natural course or state to the injury or prejudice of others."

**{¶ 64}** This paragraph begins by prohibiting an unlawful obstruction of water. The water is listed as "a navigable river, harbor, or collection of water." The word "or" indicates that these are three different kinds of waters that must not be unlawfully obstructed. Finally, the paragraph ends by explaining that the obstruction of water must not cause "injury or prejudice" to others. Simply put, the paragraph prohibits one from changing a natural passage of water in such a way as to injure or prejudice others. Once again, we find that the plain and ordinary meaning of the language is sufficient to put a person of ordinary intelligence on notice of the prohibited conduct. We therefore conclude that neither ordinance is unconstitutionally vague.

**{¶ 65}** Accordingly, the twelfth assignment of error is overruled.

<u>Equal Protection and Selective Prosecution</u>

**{¶ 66}** In his thirteenth assignment of error, Barry argues he was denied his constitutional rights to due process and equal protection of the laws because the City selectively prosecuted him. Barry claims the City selectively prosecuted him even though April Management, Ltd. and his daughter Tracy Barry were co-owners of the property. Barry also contends

the City selectively prosecuted him even though his neighbors were guilty of diverting and obstructing the water on their properties.

{¶ 67} The decision whether to prosecute a criminal offense is generally within the prosecutor's discretion. *United States v. Armstrong* (1996), 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687. "There is * * * a 'strong presumption of regularity' in prosecutorial discretion." *State v. Norris*, 147 Ohio App.3d 224, 229, 2002-Ohio-1033, 769 N.E.2d 896. In order to establish a case of "selective prosecution," a criminal defendant must make a prima facie showing: "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15.

{¶ 68} The defendant's burden of establishing discriminatory prosecution is a heavy one. *State v. Freeman* (1985), 20 Ohio St.3d 55, 58, 485 N.E.2d 1043. "The mere failure to prosecute other violators of the statute which appellants were charged with violating does not establish the defense of selective prosecution." Id. Selectivity in enforcement does not constitute

a constitutional violation unless the discrimination is "intentional or purposeful." *Flynt* at 134, quoting *Snowden v. Hughes* (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497. Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. *Freeman* at 58.

{¶ 69} There is no evidence of intentional or purposeful discrimination in this case. The City originally charged April Management and Tracy Barry with the same violations Barry was charged with. The City later dismissed the charges against them most likely because the complaining neighbors told City officials that they observed Barry making the changes to the property. The neighbors never complained about Tracy Barry or April Management.

{¶ 70} Barry also claims the City selectively prosecuted him even though his neighbors caused the water to collect on their properties. However, the only evidence suggesting that the neighbors caused the water to collect came from Barry's expert witnesses at trial. Prior to trial, the City was only aware of the neighbors' complaints accusing Barry of creating the collection of water. Having failed to demonstrate that the prosecutor intentionally discriminated against him in bad faith, Barry fails to establish the prima facie case of selective prosecution.

{¶ 71} Accordingly, we overrule the thirteenth assignment of error.

**{¶ 72}** <u>Ineffective Assistance of Counsel and Cumulative Error</u>

**{¶ 73}** In his fourteenth assignment of error, Barry argues he was not afforded the effective assistance of counsel because his trial counsel: (1) failed to raise the issue of double jeopardy; (2) failed to challenge the absence of a mens rea in the ordinances, (3) failed to move for dismissal or continuance because the City failed to produce a bill of particulars, (4) failed to object to the prosecutor's mistatements of the law during closing argument, (5) filed inadequate jury instructions, (6) failed to demand an instruction and an answer to the jury's question regarding Barry's conduct before the date set forth in the complaint, (7) failed to object to testimony and evidence of conditions outside the complaint, and (8) failed to argue that the City had not established the existence of a watercourse as defined by Ohio law. In his fifteenth assignment of error, Barry argues that the cumulative effect of these errors deprived him of a fair trial. Because these two assigned errors are interrelated, we address them together.

**{¶ 74}** To establish ineffective assistance of counsel, Barry must demonstrate that his lawyer's performance fell below an objective standard of reasonable performance and that he was prejudiced by that deficient performance, such that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668,

687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18. In other words, counsel's errors must be so serious as to render the result of the trial unreliable.

{¶ 75} Pursuant to the cumulative error doctrine, the existence of multiple errors, which may not individually require reversal, may violate a defendant's right to a fair trial. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 397, 721 N.E.2d 52, citing *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256. To affirm in spite of multiple errors, we would have to determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. *DeMarco* at 195 (stating that the errors can be considered harmless if there is overwhelming evidence of guilt or other indicia that the errors did not contribute to the conviction).

{¶ 76} We have already determined in our discussion of Barry's other arguments that most of Barry's claimed "errors" were not errors as a matter of law. We found that the bill of particulars the City provided to Barry's counsel was sufficient to put him on notice of the specific allegations against him. We also held that the prosecutor's closing argument did not prejudice Barry because the Court read the ordinances to the jury verbatim when it instructed the jury on the law. Trial counsel's decision not to request a definition for "watercourse" was not error because a watercourse was not at

issue and because the ordinances contained words of common usage typically within the vocabulary of persons of ordinary intelligence.

{¶ 77} With respect to Barry's claim that his lawyer failed to raise the issue of double jeopardy, Barry asserts that jeopardy attached when the trial court accepted his no contest plea. By failing to raise the issue before trial, Barry argues his trial counsel caused him to be subjected to an illegal and unnecessary trial. We disagree.

{¶ 78} The double jeopardy clause of the Fifth Amendment protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *Brown v. Ohio* (1977), 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187, quoting *N. Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656.

{¶ 79} When Barry pled no contest, the court held its finding in abeyance pending Barry's efforts to comply with the ordinances. The court never found him guilty, and Barry was never convicted or sentenced. Barry was also never acquitted or punished for violating the City's ordinances before trial. Therefore, jeopardy never attached and his trial counsel had no reason to raise the issue of double jeopardy.

{¶ 80} Barry also claims his trial counsel was ineffective because he failed to demand an instruction and an answer to the jury's question regarding Barry's conduct prior to the date set forth in the complaint. He also claims his counsel was ineffective for failing to object to evidence regarding the condition of his property prior to May 14, 2009 — the date set forth in the misdemeanor citations. Barry fails to explain how these alleged errors prejudiced him. Building code violations are often an ongoing concern over a period of time until the property owner brings the property into compliance. Although there was evidence that Barry violated the City's ordinances over a period of time, he was only charged with one count as to each ordinance. Therefore, Barry was not prejudiced by counsel's failure to request an instruction or to object to evidence relating to Barry's property prior to the date alleged in the citations, and there was no accumulation of errors that rendered the jury verdict unreliable.

{¶ 81} Accordingly, the fourteenth and fifteenth assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR